## BASIL DEVEREUX v. M. McMAHON et al.

*Deed—Execution—Delivery—Seal—Subscribing Witness—*
*Probate—Registration—Evidence—Fraud—Statute.*

1. A party against whom the registry of a deed (or other instrument), or a copy thereof has been introduced in evidence, cannot then raise the objection that there is a variance between such registry, or copy, and the original instrument; if he desired to avail himself of such objection he should have required the production of the original in the way provided by the statute (*The Code*, § 1251).

2. While the statute of North Carolina (*The Code*, § 1554) requires all deeds conveying lands to be signed by the maker, the signing need not necessarily be at the end of the deed; if the signature is in the body of the instrument it is sufficient.

3. Nor is it essential that the maker should actually sign his name; he may authorize another to do so in his presence, or he may affix his mark or other symbol and thereby adopt a seal attached, as well as his own name written in the deed, by another, and it makes no difference that the maker is able to write his name, or that there is no subscribing witness.

4. The execution of a deed by affixing a mark, either by the maker himself or by some one in his presence thereto duly authorized, may be proved by evidence that it was a substitute habitually used by the maker for his signature and capable of identity, as proof is made of handwriting. or from the evidence of an eye-witness that he saw the mark attached, or heard the maker acknowledge it as his.

5. A number of grantors may, by delivery, adopt a seal attached to the name of one of them, there being a recital in the deed that they had affixed their seals.

6. If a seal is attached to the maker's name, although there is no such recital, it will constitute the instrument a deed.

7. The law favors those who are illiterate and will endeavor to arrive at and carry out their true intent by a liberal application of technical rules.

8. A subscribing witness to an instrument may adopt a mark or any other symbol for his signature, when such mark or symbol has such peculiarities as will enable it to be identified as his act.

9. Registration of deeds and other instruments required to be recorded is not made void by reason of the mistake of the officer making them; such errors do not vitiate the probate or deprive a party of the right to read the registry as evidence: Such error being shown, the presumption of the correctness of the copy is rebutted and opens the way for the question whether the instrument was such as might be admitted to registration.

10. The facts of the signing by the grantor and possession of the deed by the grantee being established a delivery will be presumed.

11. The mis-recital or failure to read the contents of a deed to an illiterate grantor who requests to know what it contains is a fraud in the *factum*.

This was a CIVIL ACTION, brought for the recovery of possession of land, and tried at September Term, 1890, of the Superior Court of HALIFAX County, *Armfield, J.*, presiding.

The plaintiff was introduced as a witness and testified that the land was worth $40 or $50 a year. On cross-examination he testified that Thomas Alexander was carried by him from his home in Halifax County to the plaintiff's home in Nash County, in order that he might take better care of him; "Tom wanted to go; he died about a week afterwards; he signed the deed about 12 o'clock in the day and died about the same hour that night; they tried to read the deed to him, but he said it made no difference; he asked who wrote it, and was told it was Mr. Thorpe; he asked if he was a lawyer, and was told yes; they tried to read it to him but could not make it out; he asked if it stipulated that he (Basil) should take care of him and Frankie during their lives; was told yes, and said that he was satisfied; I told him what was in the deed; Solomon Davis was the one who tried to read the deed; John Cobb was not then present; Davis witnessed the deed; Cobb came later in the day, and Tom acknowledged the deed again before him, and he wrote these words on it, 'John Cobb witness *to of what was sed, Thomas Alexander did agree to the Deed.*'"

The plaintiff then rested his case.

The defendants offered a paper purporting to be the original deed from Alexander to Devereux. In the attestation clause the words "Solomon Davis" were not written out, but the letters "D. S. C." were followed by certain flourishes.

The defendant M. McMahon was then introduced, who testified that he had known Thomas Alexander twenty-five or thirty years, and had had considerable dealings with him, and he could not read or write.

The defendants then introduced W. T. Purnell, who testified that he knew Tom Alexander well; saw him at Halifax depot on the day that he went to Nash; tried to talk to him, but he was so sick that he could not talk—was paralyzed, and witness thought that he was dead; "was just as bad off as a man could be; his feet had been badly burned; he was at the depot, in a bed, and feathers were all over him."

Defendants then introduced Alfred Walters, who testified that, the day before he left home, he saw Tom Alexander, and helped to dress him on the morning he left. "He did not speak from his home to Halifax. He said that he would be back to-morrow. He was as bad off as he could be when I left him on the train. Tom is an uncle of the plaintiff, and raised him. Tom had no children. I married Tom's niece."

Defendants rested.

The testimony of Solomon Davis, who was next introduced for plaintiff, is embodied in the opinion.

Plaintiff introduced Simon Beckton, who testified: "I was there when Tom signed the deed. I got there about 11 o'clock. Tom talked with good sense. I saw Tom take the pen and have the paper. His mind seemed good then. He was talking about being burned—how he came to be there; said Basil would do more for him than anyone else, etc. I saw Basil give him the deed and having it fixed up by Mr. Thorpe. He said it was to be signed to-morrow. Tom said, 'Better fix it now; we can't tell what a day may bring forth.'

Tom asked him what was in the deed, and Basil told him. I (witness) can't read or write. Tom was in the bed when he signed the deed. Davis had hold of the end of the pen when Tom signed."

Plaintiff then introduced Nat. Alexander, who testified: "I am an illegitimate son of Tom Alexander. Before he went to Nash county he proposed to me to take him to my house and take care of him and his sister Frankie during their lives, and he would give me a deed to the land. I told him I was not able to do it, and he said he was going to write for Basil to come. He wrote to Basil, and, after that Basil came. He did not take him home that time, but did shortly after."

Defendants object to this. The objection overruled, and defendants excepted.

The defendants contended, among other things through-out the trial, that the deed was never signed; and secondly, that plaintiff fraudulently induced Alexander to sign it.

The plaintiff then introduced John Williams, who testi-fied he had heard Tom say McMahon had failed to take care of him; said he was going to write Basil to come and take him in hand; said he hadn't seen Basil in twelve years. This was in 1886, Basil came in 1887.

The plaintiff was recalled, and testified that three or four years before Tom died he came up and attended to his mat-ters for him; that he took Tom off just before Christmas and he lived one week and until Friday night of the next week.

Mr. Thorpe testified that he wrote the paper on the 13th and dated it on the 14th; that he gave the deed to Basil on the 13th.

The defendants' counsel claimed in his argument—

1. That there was no sufficient signing of said deed or paper.

2. That it was not lawfully and properly registered.

3. That there was no evidence of its delivery.

His Honer charged the jury, that if they found from the evidence that Thomas Alexander, after being made acquainted with the contents of the paper or deed, with intent to execute it, made the cross-mark opposite the word "seal" freely and voluntarily, and then had sufficient mental capacity to understand the nature of the transaction and the situation of the property, and his circumstances, it was in law a sufficient signing. Defendants excepted.

He further charged, that if the jury believed from the evidence that Solomon Davis was in the habit of signing his name by the letters "D. S. C.," and made his signature in this way to said deed, at the request of Thomas Alexander, it was a sufficient attestation. Defendants excepted.

His Honor further charged, that if the jury believed from the evidence that Alexander signed the deed for the purposes expressed, and Davis, after signing as a witness, handed it to Devereux in his presence and with his assent, or if Alexander handed it to Devereux, there was some evidence of delivery to be considered by them. Defendants excepted.

Verdict and judgment for plaintiff, and defendants appealed.

The material portions of the original deed and the record in the Register's office are incorporated in the opinion.

*Mr. R. O. Burton, Jr.*, for plaintiff.
*Messrs. Thomas N. Hill* and *W. H. Day*, for defendants.

Avery, J.—after stating the facts: It is provided by statute (*The Code*, § 1251), that " the registry or a duly certified copy of the record of any deed, &c., may be given in evidence in any Court, and shall be held to be full and sufficient evidence of such deed, &c., although the party offering the same shall be entitled to the possession of the original, and shall not account for the non-production thereof, unless, upon a rule or order of the Court suggesting some material

variance from the original in such registry, or other suffi-
cient ground, *such party shall have been previously required to
produce the original,* in which case the same shall be pro-
duced or its absence duly accounted for, according to the
course and practice of the Court."

After the plaintiff had read the deed recorded in the Reg-
ister's book, which was made competent evidence by the
statute, he furnished, at the request of the defendant, volun-
tarily, and not in obedience to an order of the Court, the
original. The latter could not then avail himself of the
objection that there was a variance between the original and
what purported to be a copy on the book of the Register, by
objecting to the admission in evidence of the copy. If there
had been any ground of complaint, the point intended to be
raised was fairly presented by the exceptions to the charge
of the Court at a later stage of the trial, the defendant hav-
ing, meantime, offered the original deed in evidence

The last clause of the original deed and the attestation
clause, with the signatures, were as follows:

" In witness whereof, the said Thomas Alexander hath
hereunto signed his name and affixed his seal the day and
date above written." X  [Seal.]

" Signed, sealed and delivered in presence of X John Cobb,
witness towards of what was *sed,* Thomas Alexander *did*
agree to the deed. D. S. C."

The same portion of the deed was recorded in the Regis-
ter's office as follows:

" In witness whereof, the said Thomas Alexander hath
hereunto signed his name and fixed his seal the day and
date above written.
" Witness: X  [Seal.]

"Signed, sealed and delivered in the presence of X John Cobb, witness toward of what was *sed* Thomas Alexander *did* agree to the deed.  SOLOMON DAVIS."

The defendant contended that the deed was not signed in accordance with the requirements of our statute of frauds (*The Code*, § 1554), and that the Judge below should have instructed the jury that the plaintiff had failed to adduce any evidence tending to show title in himself, and could not therefore recover.

Under the Saxon rule in England, it was only required that deeds should be subscribed with the sign of the cross. It was not necessary that a seal should be attached.  After the Norman conquest sealing became a requisite, but signing of all kinds ceased to be required.  3 Wash. R. P., 242; Coke. Lit., 171, b.; 2 Blac. Com., 309.  After the statute of frauds was enacted it became essential that every deed purporting to convey land, and every other instrument required under its provisions to be in writing, should be signed by the party to be charged therewith.

It is now an established rule that the name of the party to be charged may be written by an agent in his presence and under his direction, the act of the authorized agent being theoretically the act of the principal.  Tiedman on R. P., § 807; *Pierce* v. *Hakes*, 23 Pa. State, 231; *Insurance Co.* v. *Brown*, 30 N. J. Eq., 193; Browne on Stat. of Frauds, 12; *Kime* v. *Brooks*, 9 Ired., 218; *Frost* v. *Deering*, 21 Me., 156; *Gardner* v. *Gardner*, 6 Cush., 483.

Under the provisions of our statute (*The Code*, § 1554) all of the instruments enumerated are required to be in writing and *signed* by the party, etc., while in the statutes of some of the other States the word "subscribed" is substituted for signed.  Modern text writers generally concur in the opinion that it is not essential that the signature should be placed at the end of the deed or other instrument, where the law

requires signing only. Martindale on Conveyancing, § 6; 5 Am. & Eng. Enc., 441; Tiedman Real Prop., § 807.

In the construction of statutes in reference to wills a similar rule has been generally adopted. Signatures in the body of the will have been declared to constitute a sufficient compliance with the requirement that there should be a signing, and the Courts have gone so far as to sustain the validity of the execution of a will, where the name of the testator was written under the names of the witnesses to the attestation clause after having been written also as a part of that clause by him. 7 Mews Jacobs Dig., 879; 1 Williams on Executors, 60. It is conceded that where another person has already written the signature of one who is illiterate, the latter may adopt the signing subsequently by attaching a cross or other mark used by him as a substitute for an actual signature, though he could not so ratify the act of an agent who signed his name not in his presence except by attaching such mark. The grantor in this case enquired who had written the deed, and was told that it was written by Mr. Thorpe, a lawyer, and in substance what were its contents. It was insisted with much force by the learned counsel on the argument, that when Thomas Alexander made the cross-mark opposite to the seal and beneath the clause reciting his name, he adopted the signing of his name in that clause, the name being in close proximity to the cross and seal. It is well established that any number of grantors may by delivery adopt a seal opposite to the name of the first of the number who signs the deed, there being a recital in it that they had attached their seals; while on the other hand where there is no such recital, a seal attached to the name will be deemed sufficient to constitute the instrument a deed. 3 Wash. Real Prop., 244, 245; Tiedman, *supra*, 808; *Yarborough* v. *Monday*, 2 Dev., 493.

It seems not unreasonable to be guided by the principle, so often invoked in the construction of deeds and wills, that

the law will favor those who are *inops consilii* and illiterate, and attempt to arrive at and carry out their true intent by a liberal application of technical rules. Washburn, *supra*, at page 244, says: "Affixing a mark by the grantor against his name, though written by another, is a *signing*, although it do not appear that he could not write his own name." It being settled, then, that our statute does not require that the name should be subscribed at the end of the instrument, when written by the party to be charged in his own handwriting, it would seem to be an unreasonable discrimination against, instead of in favor of, an illiterate person to declare his conveyance null and void because he attempted by a mark placed in proximity to the seal at the end of the deed to adopt a signing of his name in the last clause of the instrument. The Courts, since the enactment of the statute of frauds (29 Charles II), have used the maxim *quod facit per alium facit per se* with great liberality, especially in making auctioneers, by implication of law, the agents of those who bid for land at sales. In construing the act of making the mark in this case as an adoption of the signature just above it in the body of the deed, we can foresee no greater danger of opening the door for the evasion of the statute of frauds than in any other case where the mark is used and placed in juxtaposition to the written name. In either case the execution of the instrument must be ordinarily shown by the acknowledgment of the maker, or the testimony of a witness who saw it made, and even where both the maker and subscribing witness may have died, the necessity for proving the genuineness of the signature of the witness or some distinguishing feature in the mark made by the grantor, is an ample guaranty that the opportunity or incentive to evade the statute of frauds will not be enhanced by sustaining the validity of the signing of Thomas Alexander. *Davis* v. *Higgins*, 91 N. C., 382. If there had been no witness to the deed, then it could not have been admitted to probate without

proof that the mark was habitually used by Alexander as a substitute for signing his name, and that there was some peculiarity in its appearance which distinguished it from other marks and enabled the witness to recognize it as he would the peculiarities of handwriting. *Sellers* v. *Sellers*, 98 N. C., 16; *State* v. *Byrd*, 93 N. C., 624; *Howell* v. *Ray*, 92 N. C., 510. In support of this view, Justice MERRIMON, delivering the opinion of the Court in *State* v. *Byrd*, *supra*, said: " While generally a mere cross-mark employed by a person who cannot write, as evidence that he executed a paper-writing to which it is affixed, cannot be proven, yet a person may have a mark so *peculiar* and so uniformly used by him for such purpose as that it may become well known as his mark, and may be proven just as the signature of one who writes may be proven to be in his own handwriting. A mark, *like the signature* of a party, is intended to be evidence of the fact that the party making it made it, and identifies himself with the paper-writing signed in the way and for the purpose indicated in it, and it is just as *binding ordinarily without a subscribing witness as with one*, but it may be proven as a signature may be by one who saw it made, or who heard the maker acknowledge it to be his, and the maker himself is generally a competent witness to prove that he made it." *Howell* v. *Ray*, 92 N. C., 510. We have reproduced this extract to make it clear that we are sustained by an adjudication of this Court, in which it is laid down as a principle, in the most explicit way, that an instrument purporting to be a deed and required to be in writing and signed by the party charged thereby, is not void upon its face because the maker or grantor has signed by making a simple cross, nor even if there is no witness to such signing. The law still leaves the way open for proof of its execution by showing it to be a peculiar substitute habitually used by the grantor, instead of an ordinary signature, or for evidence from an eye-witness that he saw the mark attached, just as he could

testify to the act of subscribing the name. Our view of the subject is sustained by reason and the current of authority. While it is not probable that any case precisely similar in all respects to that under consideration has ever arisen, the principle announced finds abundant support in the adjudications of other Courts and the conclusions deduced from them by leading writers upon the subject of deeds and conveyances. Lawson Rights & Rem. vol., 5, § 2270, says a person physically unable, or too illiterate, to write his name, may sign by making a cross, a straight or a crooked line, a dot or any other symbol. In Martindale on Conveyancing, § 190, the rule is stated as follows: " As to what will constitute a sufficient signing, it may be observed that it is not necessary that the party should write his own name; *his mark is sufficient, though he be able to write.*" In section 6 the same author says: "It seems that putting initials to a document, the name appearing elsewhere, is a sufficient signing to satisfy the requirements of the statute." If the initial letters of ones name be allowed to serve as a substitute for a formal signature because the name is *signed in full in the body of the deed,* why should we hold that a mark, the making or distinctive character of which is susceptible of proof, is insufficient under similar circumstances?

The second ground of exception was that the deed was not lawfully and properly registered. The certificate of probate and fiat are as follows: " State of North Carolina—Nash County. I, John T. Morgan, Clerk of the Superior Court, do hereby certify that the execution of the annexed deed was this day proven before me by the oath and examination of Solomon Davis, the subscribing witness thereto, who says that the deed was signed and delivered in his presence, January 13, 1888, to the grantee for the purposes therein expressed. Witness my hand and official seal, this 20th day of January, 1888." (Signed and sealed by the Clerk.)

DEVEREUX *v.* McMAHON.

"STATE OF NORTH CAROLINA—Halifax County. In the Superior Court, February 9th, 1888. The foregoing certificate of John T. Morgan, Clerk of the Superior Court of Nash County, duly attested by his official seal, is adjudged to be correct. Let the instrument, with the certificates, be registered." (Signed John T Gregory, Clerk Superior Court.)

"Filed for registration February 9th, 1888." (Signed L. Vinson, Register of Deeds.)

If the objection to the probate is based upon the ground that the original deed shows that Solomon Davis, instead of signing his full name to the attestation, wrote the letters "D. S. C.," and the Register recorded the signature "Solomon Davis," we think it is clearly untenable. Registration is not rendered void by reason of a mistake by the officer in recording deeds, but the registration is presumptively correct, and the remedy for such defective record is to demand the original, which, if legible, is the highest evidence of the form of the deed and probate. *Davis* v. *Inscoe,* 84 N. C., 396 ; *Love's Executors* v. *Hardin,* 87 N. C., 249. When this case was brought to this Court by a former appeal (102 N. C., 284), we held that the fact that a witness had made a cross-mark in attesting a deed, did not affect his competency to prove its execution. See also 5 Lawson, § 2271; *Nelins* v. *Brickell,* 1 Haywood, 19. Upon the principle already announced in discussing the signature of the grantor, there can be no further controversy as to his eligibility, when it appears that he used characters so peculiar as a substitute for signing his name. *Tatom* v. *White,* 95 N. C., 453 ; *State* v. *Byrd, supra ; Sellers* v. *Sellers, supra ;* Martindale, § 6.

His testimony was as follows: "I witnessed the deed; I saw Tom sign the deed, and he handed it to me and asked me to witness it; that is my name, D. S. for Davis C. for Solomon ; that is the way I sign it; the rest was put there merely to fill in; I thought the old man was in his right mind; I did not hear anyone read the deed to Tom; Tom

108—10

asked Basil if he had got the deed fixed up; he said yes; Tom asked who fixed it; he said Mr. Thorpe, a lawyer, and told him what was in it; Tom signed the deed about twelve o'clock in the day, and died about twelve o'clock that night. I handed the deed either to Basil in Tom's presence, or back to Tom and he handed it to Basil."

We think that though there was a mistake in recording the deed, it did not affect the right given by statute to the plaintiff to read the record, as already stated, subject to the right of defendant, if the original could be produced, to correct such mistakes by its introduction. The deed was properly proven by Solomon Davis, who was a competent witness. The effect of showing the mistake of the Register of Deeds was not to annul the probate, not even to destroy the competency of the copy upon the book as evidence, but simply to rebut the presumption that the copy was correct, and open the way for the consideration and discussion of the question whether the paper-writing, in its original shape, was upon its face an instrument that, under our statute, might be probated and admitted to registration. Defendant's counsel insisted that there was no evidence of delivery. Though neither proof of possession of the deed by the grantee alone, nor evidence of the handwriting of the bargainor, unconnected with the facts, will raise a presumption of delivery so as to dispense with actual proof of it, yet when both the signing by the grantor and possession of the grantee are shown, there is *prima facie* evidence of delivery. *Williams* v. *Springs*, 7 Ired., 384; *Whitsell* v. *Mebane*, 64 N. C., 345; *Ingram* v. *Hall*, 1 Haywood, 193. But the witness Davis testified that when the deed was handed to him by the grantor, he either handed it in his presence and with his acquiescence to the grantee Basil Devereux, or he returned it to Alexander, who handed it to Devereux. That was evidence, if believed, of an actual delivery. The failure to read a deed, or the misrecital of its contents to an illiterate grantor

who asks to know what it contains, constitutes a fraud in the *factum*, and on proof of the facts the instrument was formerly treated as void in a court of law, and can now be attacked without initiating a direct proceeding to impeach it. But where a grantee, though an illiterate man, does not demand that the deed shall be read, and all of the testimony tends to show that a witness told him in substance what its provisions were, there is no evidence of fraud to be submitted to the jury. *School Com.* v. *Kesler*, 67 N. C., 443; *Nicholls* v. *Holmes*, 1 Jones, 360; *Canoy* v. *Troutman*, 7 Ired., 155.

There is no error, and the judgment must be affirmed.

Affirmed.