C. M. HERNDON v. THE IMPERIAL FIRE INSURANCE COMPANY OF LONDON.

*Arbitration and Award—Insurance.*

1. If an award, upon its face, appears to be complete and final, and contains no erroneous view of the law upon which it is based, every reasonable presumption will be made in favor of its validity, but it may be attacked by evidence *aliunde* that it was procured by fraud, and that the arbitrators refused to hear competent testimony.

2. Two arbitrators chosen under a stipulation in an insurance policy, agreed upon an award and prepared a paper containing it, but being uncertain under the reference whether they had passed upon all the questions submitted, took it to the adjusters representing the insurance company, and said the award was not complete if it was proper for them to consider other items; otherwise, it was; and being assured that it was not necessary to pass upon any other question, signed it, when, in fact, the reference did embrace the other matters: *Held*, it was not error to submit to the jury the fact whether there was a final agreement upon, and delivery of the award.

MERRIMON, C. J., and SHEPHERD, J., dissenting.

This was a CIVIL ACTION brought on an insurance policy to recover for loss by fire, tried at June Term, 1891, of the Superior Court of DURHAM County, before *Boykin, J.*

The issues and findings were as follows:

"1. Has there been an arbitrament and award as to the amount of damages which plaintiffs could recover under this policy? Ans. No award.

2. Did plaintiff file with defendant notice and proof of loss as required by the policy? Ans. No.

3. Did defendant waive notice and proof of loss? Ans. Yes.

4. What was the damage done by the fire to the property included in the policy? Ans. Nine thousand two hundred dollars, with interest."

The other material facts are stated in the opinion.

*Messrs. J. W. Graham* and *W. W. Fuller,* for plaintiff.
*Messrs. J. W. Hinsdale* and *J. S. Manning,* for defendant.

AVERY, J.: The plaintiff and defendant selected each an appraiser, under a condition of the policy which provided that, where they could not agree as to the amount of loss or damage, two appraisers might be so chosen, and a third added at the demand of either insurer or insured, to determine "the sound value and loss or damage to the property *partially or totally destroyed."* Another stipulation reserved to the company "the right to take the whole or any part of the property so damaged at the appraised value, or *to repair, rebuild* or replace *the property lost* or damaged with other of like kind and value," etc.

The single question really presented by the appeal is whether the paper signed by the arbitrators was completed and delivered as their award. In the charge of the Court, to which exception was taken, the jury were told that "if Dewey and Heartt (the appraisers) jointly agreed and jointly reported, and *any time elapsed before Heartt expressed his dissent, the award was good. If they ever agreed, the arbitrament was final, and the plaintiff cannot recover."* The alleged award was in evidence, and the Court told the jury if it was agreed to by the appraisers it was final, and would bar recovery by plaintiff. The unavoidable implication arising out of the language used was that there was no question as to the fact that the paper was, upon its face, in the absence of extrinsic proof, a sufficiently full and a final award as to all matters involved in the controversy. The attention of the jury was confined to the single question of fact whether both parties agreed to the report and signed and delivered it as their award, intending it to be unconditionally a final determination of all issues raised by the pleadings. When the Judge

told the jury in language so explicit that the controversy was narrowed down to the single inquiry whether both agreed to sign and did deliver the paper as their joint award, there was no more necessity for the negative averment in his charge that the paper could not be attacked for any defect apparent upon its face, or that the appraisers had not undertaken to decide a question of law and missed it, than there was for any other abstract statement of the general doctrine of arbitration and award, embodying a proposition of law correct theoretically, but in fact inapplicable to the testimony to which the attention of the jury was directed, or unnecessary in view of instruction already given. When the Court told the jury that the award in its present form was final if "the appraisers jointly agreed and jointly reported it," how would it have helped the jury to a conclusion to have added "that the award upon its face covered all matters in dispute," or "that it did not appear from the face of the award that the arbitrators undertook to decide according to law and failed?" The Judge went behind those questions and dispensed with all necessity for mentioning them, when he said that the award, in the shape in which it was before the jury, was a final adjustment of the controversy if it was executed and delivered by the appraisers.

The two appraisers, Dewey and Heartt, went from their room at the hotel to that occupied by the adjusters of the defendant company and several other companies which had issued policies on the property damaged and destroyed by the fire, Dewey having in his hand at the time a paper. In response to the inquiry from one of the adjusters whether they had finished their award, Dewey said, " We don't know whether it is law for us to consider the value of the articles covered by the policy which were wholly destroyed and are not visible to the eye on the premises, or only such things as we saw partially destroyed; nor whether it is law for us to consider the labor and expense of erecting, testing and regu-

lating the machinery and getting it in working condition to make ice, and the freight on machinery from its place of manufacture, or not. If it is law to consider any of those things, then our award is not complete; if it is not law to consider any of them, then we are through." One of the adjusters replied, in the presence of the others, "You have considered all that is right. If there is anything left out, you can go back this afternoon and add it." Heartt and Dewey then retired and shortly returned, when Heartt said, " Well, with the understanding that if any of the items that I have mentioned as not having been considered ought to have been considered this is not to be our award, because it is not final and complete, I will sign it." Heartt signed the paper and stepped out. Kenney, the defendant's adjuster, immediately took up the paper and offered to pay Herndon the amount of the appraisement, it being now admitted that the appraisers were in error in failing to determine the matters mentioned by Heartt, and which he was uncertain as to the necessity for incorporating into the award. The plaintiff declined the offer and insisted upon having the award completed.

Heartt was recalled, and repeated what he had said; but Kenney and the other adjusters insisted that the duty of the appraisers was at an end, and refused, in any event, to pay more than the sum named in the paper as the value of the damage assessed as far as the arbitrators had gone in estimating losses.

It was expressly stipulated in the agreement to submit to arbitration, that the appraisers should "estimate the loss upon *property damaged and destroyed*," and also that they were "to make an estimate of the actual cash cost of replacing and repairing the same or actual cash value thereof," etc. It is not denied that the award is not so full and complete a report of loss as it was contemplated by the parties to this agreement that it should be, and that it is defective

in failing to determine the matters referred to by Heartt in his conversation with the adjusters.

It does not appear from the face of the report that the appraisers rested their decision upon any erroneous view of the law, and therefore, if both of them signed it unconditionally and delivered it as their award, it would not be subject to attack for omission through ignorance of the law as distinguished from arbitrary refusal to hear or consider pertinent testimony as to material questions arising out of the controversy. *Smith* v. *Kron*, 109 N. C., 103; *Hurdle* v. *Stallings*, 109 N. C., 6; *Allison* v. *Bryson*, 65 N. C., 44; *Farmer* v. *Pickens*, 83 N. C., 549; *Robbins* v. *Killebrew*, 95 N. C., 19.

Where the award upon its face appears to be complete and final, and sets forth no erroneous view of the law as a reason for the conclusions stated, it will be presumed also that the arbitrators considered and determined all matters in dispute and passed upon all pertinent evidence. *Robbins* v. *Killebrew, supra; Williams* v. *Clouse*, 91 N. C., 322; *Jones* v. *Coffey*, 97 N. C., 347; *Gay* v. *Stancell,* 76 N. C., 369.

But though the award may be couched in such terms as to afford no intrinsic ground for impeachment, it has been expressly held by this Court that it may be attacked by evidence *aliunde* tending to show that there was fraud in procuring it, or that the arbitrators refused to consider pertinent testimony when offered. *Hurdle* v. *Stallings, supra.*

A deed that contains all the formal parts necessary to pass the land described in it and which had been duly proven and registered, is open to an attack, even in a court of law, on the ground that there was a want of capacity in the maker or fraud in the *factum*, or that it had not been delivered at all, or only as an escrow. *Jones* v. *Cohen*, 82 N. C., 75; *Clayton* v. *Rose*, 87 N. C., 106; *Mobley* v. *Griffin*, 104 N. C., 116; *Helms* v. *Green*, 105 N. C., 259; *Gilchrist* v. *Middleton*, 107 N. C., 679. And the registration of a deed is but *prima facie* evidence of its actual delivery, which may be rebutted

by testimony satisfactory to a jury, *Devereux* v. *McMahon*, 108 N. C., 146; *Whitman* v. *Shingleton, Ibid*, 193; *Williams* v. *Springs*, 7 Ired., 384; *Whitsell* v. *Mebane*, 64 N. C., 345.

The Supreme Court of Massachusetts and the Court of Errors of New York, concurred in holding at a very early period, as did this Court in *Hurdle* v. *Stallings, supra*, that though every reasonable presumption would be made in favor of an award, evidence would be heard to impeach it for refusal of the arbitrators to hear material evidence. *Van Cortland* v. *Underhill*, 17 John., 405; *Elwards* v. *Stevens*, 1 Allen, 315.

When Heartt announced that he was ready to sign the award as written, with the proviso mentioned, and was assured by one of the adjusters, in the presence of the others who were acting in concert with him, that they had considered everything that was necessary, but if not that Heartt might return in the afternoon and correct it, and Heartt signed it on that assurance, the award was not, in contemplation of law, delivered and published, because Kenney, the defendant's adjuster, then picked it up and refused to agree to any amendment in the afternoon, as originally proposed. The fact that another of the adjusters may have given the assurance while Kenney assented to it by his silence only, does not make it enforcible at the instance of the defendant, and not in favor of the company whose adjuster acted as spokesman for the party. While the law favors this mode of settling suits when the hearing is conducted fairly, the Courts will not sanction such methods as were resorted to in this instance, if Heartt is to be believed, in order to induce an arbitrator to sign an award. If the award was signed when it was incomplete, because of the false assurance given by one of the adjusters, the others who were present acting in concert with him, will not be allowed to claim for their companies that they shall be permitted to reap the benefit of the falsehood. Where two arbitrators act, the award must be the

expression of their concurrent conclusions. The jury evidently believed, if we judge from their findings under the instruction of the Court, that Heartt at least did not assent unconditionally to the award in its present shape, and that the adjusters refused to redeem their promise by permitting him to take it back in the afternoon for the purpose of amending it, if he could get the concurrence of his associate Dewey. The very question that Heartt could not decide might, by agreement of the appraisers, have been inserted in the award, and its validity made to depend upon the decision of the Court as to the right of the plaintiff to have the evidence mentioned considered and passed upon (1 Am. & Eng. Enc., p. 680, and note 2) just as arbitrators may waive their right and set forth their conclusions of fact and law, if they so elect, to be reviewed by the Court. *Smith* v. *Kron, supra.*

In the case of *Caldwell* v. *Dickinson,* 15 Gray (Mass.), 371, the facts were that the arbitrators met and signed an award which, upon its face, was a complete settlement of the controversy, but when they met the parties, the chairman of the three stated verbally, as did Mr. Heartt, that he was " uncertain whether the paper expressed correctly what they had decided," and that they might wish to amend the award on certain conditions. He gave copies to the parties and retained one for himself, which he afterwards amended when his associates were not present. The two other copies were not altered so as to correspond with that in the possession of the chairman. When the plaintiff proceeded to have the award in his possession enforced, the Supreme Court said, in passing upon the foregoing facts, " It is clearly established *that that writing did not contain the real decision of the arbitrators, but was made under a mistake, and was only published with a proviso that it should not be considered as their award,* but should be corrected if the mistake which was then suspected should be afterwards ascertained." The error into which Heartt feared they might have fallen, when he was in the room with

the adjusters, he was afterwards convinced had been made; but the adjusters refused to return the paper so that it might be amended in accordance with the wish of the appraisers, as expressed for both by Heartt in the presence of Dewey. The papers that they took possession of do not contain the award of the two appraisers according to the testimony of Heartt, and there was no error in submitting to the jury, as concisely as the Judge did, the question of fact whether the appraisers completed their award and concurred in it as their joint report in the form in which defendant seeks to enforce it. The jury found, in effect, upon a fair submission of the question, that the paper did not contain all of their award, and we think that the judgment of the Court that the plaintiff recover the amount of damage assessed with costs was in accordance with law. The usual course is to order such an award upon such facts as were found to be set aside (*Hurdle* v. *Stallings, supra*), but the judgment was founded upon the idea that it was invalid, and no suggestion was made that it should be amended in this respect, if it is really material to do so.

We do not think that the defendant—after failing to enforce the award and refusing to submit to amendment, should be allowed at this late day, when defeated in its main purpose, to send the plaintiffs out of Court by a tardy acquiescence in the rejected proposition to amend. After getting control of the paper " the adjusters refused to pay more than the award named in the paper, and insisted that it was final, and that the appraisers' duties were at an end." Hence this suit, in which the plaintiffs have proceeded upon the idea that the arbitrators were indeed *functi officio.*

We do not deem it necessary to take up in detail the thirty-six requests for special instructions, or pass upon some other questions suggested by the argument, but to which we attach no importance.

SHEPHERD, J., (dissenting): I very much regret my inability to agree with the Court in the disposition which it has made of this appeal. Under the provisions of the policy the parties agreed to submit their differences as to the amount of the "loss and damage" to arbitration, and the validity of the award made in pursuance of said agreement, is the chief question presented for our consideration.

It appears that the arbitrators had some difficulty in determining whether, as a matter of law, a certain expense account should be allowed the plaintiff, but it is admitted that there is nothing upon the face of the award to indicate that they undertook to decide that question according to legal principles. It is conclusively settled, as said by AVERY, J., in *Smith* v. *Kron*, 109 N. C., 104, that arbitrators "are a law to themselves, are not bound to decide correctly, and unless they gratuitously incorporate in their award erroneous views of the law as reasons for the conclusions reached, their action, in the absence of fraud, is not subject to review. *Robbins* v. *Killebrew*, 95 N. C., 19; *Miller* v. *Bryan*, 86 N. C., 167." To the same effect is the opinion of the Court in this case. It is also well settled in this State that evidence *aliunde* will not be heard for the purpose of showing that the arbitrators intended to decide according to law. *Ryan* v. *Blount*, 1 Dev. Eq., 382; *Wyatt* v. *Railroad, ante,* 145. These principles being established, and, indeed, conceded by the Court, I am clearly of opinion that his Honor erred in refusing to give the fifth instruction prayed for by the defendant, viz.: "That it does not appear upon the face of the award that the arbitrators undertook to decide according to law, and that the award cannot be set aside on account of a mistake of law," etc. Not only did the Court fail to give this instruction, but the jury were told that "if the award was made to hinge upon supposed principles of law, and they were *erroneously decided,* the award was not final and complete." So there was not only a failure to give an admit-

tedly proper construction, but there was a charge directly in the teeth of it. It may be urged, however, that the error is cured by the following language of the Judge: "If they (the arbitrators) once agreed, the arbitrament is final and the plaintiffs cannot recover;" but this language does not occur in immediate connection with the other part of the charge, but after the Court had remarked upon the manner of making the report and the dissent of Heartt. But conceding that the two instructions may be reconciled (which I apprehend it is not easy to do), the same error is repeated later by the instruction that "if they (the arbitrators) came to the conclusion that they have no right as a matter of law to include the expense account, the plaintiff is entitled to a verdict upon the first issue." It will be observed that the award was also attacked on the ground that there was no delivery or publication, and in the opinion of the Court upon that question I entirely concur. Both of these questions, however, were comprehended under one issue (that is, whether there had been an "arbitrament and award"), and how is it possible to tell which view was adopted by the jury? If we could know that they found that the award was never legally delivered or published, the error would of course be harmless; but this does not appear, and we have no right to indulge in conjectures upon so serious a question. The charge, as set out in the case on appeal, is so brief that I very much question whether it fairly presents the instructions as actually given by the Judge. It may be but a summary of the charge, which if given in full might reconcile the conflicting language to which I have adverted. As it appears in the record, I do not think that it can be made to harmonize with the defendant's prayer for instructions and the unquestionably correct principles of law embodied therein. To say the least, it did not clearly present the view

insisted upon by the defendant, and was calculated to confuse the jury.

I am, therefore, most decidedly of the opinion that there should be a new trial.

Merrimon, C. J.: I concur in the above dissenting opinion.

*Per curiam.* Affirmed.