LUCINDA E. D. PEACE v. JANIS L. EDWARDS AND OTHERS.

(Filed 10 November, 1915.)

**1. Wills—Disposition of Property—Statutory Regulations.**

The right to dispose of property by will is not a natural right, but one conferred and regulated by statute.

**2. Same—Signature—Date—Subscribed.**

The testator's signature to the will is required by our statute, Revisal, sec. 3113, though it is not required that the paper-writing be subscribed or dated. Therefore an undated will, when the name of the testator, in his own handwriting, appears in the body thereof, has the same legal effect as those bearing dates and subscribed by the testator.

**3. Same—Several Wills—Conflicting Disposition of Property—Intestacy.**

Where the decedent has left several paper-writings purporting to be his last will, containing the opening declaration, as to each, that the testator made the same as his "last will and testament," but only one of them bears date and his name subscribed thereto, and each of them making a disposition of his property different from the other, the undated and unsubscribed wills have the same legal effect as the one dated and subscribed, though the testator had endorsed under his signature, thereon, the words "last will"; and in the absence of proof as to which of the wills was the last one, the legal effect is intestacy.

WALKER, J., dissenting; HOKE, J., concurs in the dissenting opinion.

APPEAL by plaintiff from *Cooke, J.,* at the April Term, 1915, of GRANVILLE.

Caveat to a paper-writing offered for probate as the will of Josephus A. Peace, who died 9 March, 1915, aged eighty-eight years, the owner of eight hundred acres of land and certain personal property.

The deceased never married. After his death four paper-writings were found folded together in a seed catalogue in his desk, and all were in the handwriting of the deceased. Each of these four papers begins as follows: "I, Josephus A. Peace, of the county of Granville and State of North Carolina, do make, publish and declare this to be my last will and testament." Three of these papers are without date and are not

subscribed by the deceased, and the fourth is subscribed and bears date, 4 May, 1910, and under the name of the deceased are the words "last will."

No evidence was offered as to the time of writing or signing the three papers that are without date.

At the conclusion of the evidence his Honor instructed the jury as follows: "That four paper-writings of a testamentary character being before the jury, all of them being, as appears from the testimony of the propounders, in the handwriting of the deceased, J. A. Peace, and all found folded together, making four different dispositions of the property of the deceased, three of them being without date and one dated, and no testimony being offered to show which was in fact the last will of the deceased, the said writings are mutually destructive of each other, and it cannot be determined which is the last will of the deceased, and the jury, if they believe the testimony, are instructed to answer the issue 'No.'" The propounders excepted.

There was a verdict and judgment in favor of the caveators and the propounders appealed.

*T. T. Hicks and Hicks & Stem for caveators.*
*B. K. Lassiter, B. S. Royster, J. C. Kittrell, R. G. Kittrell and G. M. Pitman for propounders.*

ALLEN, J. The right to dispose of property by will is not a natural right. It is one conferred and regulated by statute. *Pullen v. Comrs.,* 66 N. C., 363. In this case *Rodman, J.,* says: "Property itself, as well as the succession to it, is the creature of positive law. The legislative power declares what objects in nature may be held as property; it provides by what forms and on what conditions it may be transmitted from one person to another; it confines the right of inheriting to certain persons whom it defines heirs; and on the failure of such it takes the property to the State as an escheat. The right to give or take property is not one of those natural and inalienable rights which are supposed to precede all government, and which no government can rightfully impair."

The only case holding to the contrary we have found is *Nunnemacher v. State,* 129 Wis., 190, which is also reported in 9 A. and E. Anno. Cases, 711, where there is a very comprehensive note collecting authorities from twenty-three states and from the Supreme Court of the United States, supporting the *Pullen case,* the editor concluding that "The doctrine of the reported case, that there is a natural right, protected by the Constitution, to take property by inheritance, devise, or bequest, is entirely new to the law. The doctrine which has long been regarded as not open to question is that such right is entirely dependent upon, and subject to modification or abridgment by, statutory law."

We must then examine the statutes of our State to see what formalities are necessary to the execution of a valid will, and when we do so we find that there is no requirement that a will shall be dated or subscribed (Rev., 3113), and in the absence of a statute saying that a will must be dated the general doctrine is that a will without date is valid. "Where the statute does not require a date an undated will is valid." 30 A. and E. Ency., 591. "The date not being a material part of a will, a will may therefore be held to be valid, although it has no date or a wrong one, unless a statute provides otherwise." 40 Cyc., 1098. See also to the same effect 14 Ency. Ev., 434; 1 Underhill on Wills, p. 247.

The statute does, however, require the will to be signed, but it is well settled that if the name of the testator appears in his handwriting in the body of the will this is a signing within the meaning of the statute. *Hall v. Misenheimer,* 137 N. C., 185; *Richards v. Lumber Co.,* 158 N. C., 56; *Boger v. Lumber Co.,* 165 N. C., 559; *Burriss v. Starr,* 165 N. C., 660.

In the last case the Court quotes with approval from *Boger v. L. Co.* and *Richards v. L. Co.,* as follows: "The authorities make a distinction between statutes requiring instruments to be signed and those requiring them to be subscribed, holding with practical unanimity, in reference to the first class, that it is not necessary for the name to appear on any particular part of the instrument, if written with the intent to become bound; and, as to the second class, that the name must be at the end of the instrument. In *Richards v. Lumber Co.,* 158 N. C., 56, dealing with this question, the Court said: 'It is well settled in this State that when a signature is essential to the validity of an instrument, it is not necessary that the signature appear at the end unless the statute uses the word "subscribe." *Devereux v. McMahon,* 108 N. C., 134. This has always been ruled in this State in regard to wills, as to which the signature may appear anywhere. If this is true of a "signature," it must also be true of the word "countersign." It has been often held that the place of signing is a matter of taste. *Adams v. Field,* 21 Vermont, 264; 36 Cyc., 441.'"

It follows, therefore, that as a will without date, and which is not subscribed, is valid, and as it is a signing within the meaning of the statute if the name of the testator is in the body of the will in his handwriting, that the three paper-writings which are without date and not subscribed have the same legal effect as the one which bears date and is subscribed, as each has the declaration in the handwriting of the testator that "I, Josephus A. Peace, of the county of Granville and State of North Carolina, do make, publish, and declare this to be my last will and testament."

We attach no significance to the words "last will" under the signature of the testator, because each paper says it is his last will.

PEACE v. EDWARDS.

We have, then, four paper-writings, found folded together among the papers of the deceased, each executed as required by statute, and each a valid exercise of testamentary capacity, and they are not in harmony so they may be upheld as one will, but are inconsistent and mutually destructive of each other, and there is no evidence, direct or circumstantial, and nothing on the face of the papers to prove which is the latest expression of the intent of the deceased. Under these circumstances neither can stand, and it must be held that the deceased died intestate.

"Where two wills containing inconsistent dispositions bear the same date, evidence is admissible to show which was executed last. If there is no extrinsic evidence to be had neither instrument will be admitted to probate." 30 A. and E. Ency., 627; 40 Cyc., 1176.

"Where two or more wills, or a will and a codicil, properly executed, but undated, or of the same date, are discovered at the death of the testator, difficulty will naturally be discovered in ascertaining which speaks his final intention. . . . If it is impossible for the Court, after considering all available extrinsic evidence, and an attentive perusal and comparison of the writings, to determine which is the later or latest, all of necessity will be void so far at least as they are irreconcilably inconsistent." 1 Underhill on Wills, 351.

We, therefore, conclude that there is no error in the instruction to the jury.

Affirmed.

WALKER, J., dissenting: I cannot agree to the result in this case. The four papers were found together in one package, three undated and unsigned and the other undated, but subscribed by the testator, and underneath his signature are the words "last will." The Court says there is no evidence that this paper-writing was his last will. I am of a contrary opinion. The testator *evidently* thought that an unsubscribed paper-writing was not a will and that it required his signature at the end of it to make it so, and, therefore, he signed at the end the one he intended to operate as his will, and, to avoid any possible miscarriage of his purpose, he not only signed it, but inserted under the signature the words "last will," so as to clearly indicate that it was so intended. If this is not so, why did he not also sign the others and write something on them (or one of them), in order to indicate his purpose that it should be his last will? He regarded the others as incomplete, and when he had finally decided as to how he would dispose of his property, he wrote this paper, signed it and added the words "last will" as a certain and sure index to his intention. Why did he sign at all, if he thought subscription was not an essential requisite of a will? He had signed the other papers, in a technical sense, but he manifestly did not know it, not being a lawyer, but it appears that he had been a man of sense and

judgment, and having written the last one, he subscribed it and so distinguished it from the others, as the last expression of his desires, in order to make his meaning and his wishes in regard to the disposition of his property perfectly plain. It is for the jury, and not for this Court, to say what he really meant, and whether this paper is in fact his last will and testament. He had, no doubt, good and valid reasons for the changes he made, but they were satisfactory to him, whether wise and discreet or not, and that is enough, for it is *his* will and not *ours,* and he had the right to do with his own as he chose, provided he did not contravene any law, and this he has not done.

JUSTICE HOKE concurs in this dissenting opinion.