NEW HANOVER RENT-A-CAR, INC., PLAINTIFF v. HOLLY N. MARTINEZ, DEFENDANT

No. COA99-321

(Filed 15 February 2000)

**Employer and Employee— covenant not to compete—signature required**

In a case where defendant-former employee's name is not found in any form on the signature line of an agreement not to compete, but defendant did print her name at the top of the agreement ahead of the substantive portions, the trial court erred in granting a preliminary injunction preventing plaintiff from working with other rental car agencies because N.C.G.S. § 75-4 requires this type of agreement to be signed, and extrinsic evidence of the other employment documents completed at the same time reveals that: (1) where a document requested identification information, defendant printed her name, but where a document requested a signature as acknowledgment and acceptance of the material or as conformation of the information requested in the document, defendant wrote her name in cursive; and (2) there was no cursive script or any writing at all on the signature line of the agreement not to compete.

Appeal by defendant from order entered 8 January 1999 by Judge W. Allen Cobb, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 9 December 1999.

*Hogue Hill Jones Nash & Lynch, LLP, by David A. Nash, for plaintiff-appellee.*

*Rice, Bryant & Mack, P.A., by Ralph T. Bryant, Jr., for defendant-appellant.*

EDMUNDS, Judge.

Defendant Holly Martinez appeals the trial court's grant of a preliminary injunction. We reverse.

NEW HANOVER RENT-A-CAR, INC. v. MARTINEZ

[136 N.C. App. 642 (2000)]

Plaintiff New Hanover Rent-A-Car, Inc., is a corporation that owns Avis automobile rental franchises in New Bern, Wilmington, Jacksonville, and Greenville, North Carolina; and Florence, South Carolina. Each location draws customers from an area within a 100-mile radius of the airport in that city. Because all auto rental companies offer vehicles that are essentially identical, the business is driven principally by the prices charged by competing rental agencies. However, according to John Dalton, plaintiff's president, customer service, including the services provided by franchise employees who work at the rental counter in each airport, is also an important factor in the business.

Defendant successfully interviewed for employment with plaintiff near the end of July 1998 and reported for training on 17 August 1998. She was given a packet of materials to read and sign. The packet included an agreement not to compete, which is at the center of this dispute. Defendant worked for plaintiff from 17 August 1998 through 17 December 1998. Her duties included taking reservations over the phone, serving customers at the counter, and performing other routine daily chores. On 17 December 1998, defendant informed plaintiff she was resigning her position to return to school, adding that she hoped to obtain part-time work in the auto rental business. The next day, defendant began working for the Hertz Rent-A-Car Agency in New Bern at a counter adjacent to plaintiff's counter.

On 29 December 1998, plaintiff obtained a temporary restraining order to prevent defendant from working for Hertz. Following a hearing on 8 January 1999, the trial court granted a preliminary injunction enjoining defendant from continuing her employment with Hertz Rent-A-Car Agency in New Bern, North Carolina, and from accepting employment with any other rental car business within a 100-mile radius of any city where plaintiff has other rental car franchises. Defendant appeals.

Defendant contends the trial court erred in granting the preliminary injunction. Our Supreme Court has said regarding a preliminary injunction:

[It] is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation. It will be issued only (1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the

Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation.

*Investors, Inc. v. Berry,* 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977) (citations omitted). "[O]n appeal from an order of [a] superior court granting or denying a preliminary injunction, an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself." *A.E.P. Industries v. McClure,* 308 N.C. 393, 402, 302 S.E.2d 754, 760 (1983) (citations omitted).

An agreement not to compete will not be enforced unless it is: "(1) in writing, (2) entered into at the time and as a part of the original contract of employment, (3) based on a valuable consideration, (4) reasonable both as to the time and territory embraced in the restrictions, (5) fair to the parties, and (6) not against public policy." *U-Haul Co. v. Jones,* 269 N.C. 284, 286, 152 S.E.2d 65, 67 (1967). The requirement that an agreement not to compete be in writing includes a requirement that the writing be signed. "No contract or agreement hereafter made, limiting the rights of any person to do business anywhere in the State of North Carolina shall be enforceable unless such agreement is in writing duly signed by the party who agrees not to enter into any such business within such territory . . . ." N.C. Gen. Stat. § 75-4 (1999). We have held: "G.S. 75-4 is consistent with the other 'statute of frauds' provisions in our law which require only that the writing be 'signed by the party charged therewith[,'] or require that the writing be signed by 'the party against whom enforcement is sought.'" *Manpower, Inc. v. Hedgecock,* 42 N.C. App. 515, 519-20, 257 S.E.2d 109, 113 (1979) (internal citations omitted); *see* N.C. Gen. Stat. § 75-4.

The case at bar may be resolved by an examination of the requirement that the writing be signed by defendant. The agreement not to compete is in the form of a printed "EMPLOYMENT AGREEMENT." It begins with a line at the top for the date. This line has been filled in by hand and reads "17 August 1998." The next line begins: "I, _____, in consideration of being accepted for employment . . . ." and continues with the substantive terms of the agreement. This second blank has been filled in by hand with the printed name "Holly N. Martinez." At the bottom of the form, following the substantive provisions, there is a line titled "Signature." This line is blank. Beneath the signature line is a notarization, signed by Robin Dalton, who is plaintiff's secretary/treasurer and wife of plaintiff's president. Defendant argues the agreement is invalid because she did

not sign it. Plaintiff responds that a signature is not the same as a subscription, and that by printing her name on the top of the agreement, defendant signed it and thereby agreed to its terms.

Our Supreme Court has held that when a statute dictates that a document has to be subscribed, the signature should be at the end of the document, but "it is not essential that the signatures should be placed at the end of the deed or other instrument, where the law requires signing only." *Devereux v. McMahon*, 108 N.C. 134, 140-41, 12 S.E. 902, 904 (1891) (citation omitted); *see also Peace v. Edwards*, 170 N.C. 64, 86 S.E. 807 (1915).

> The signature, it is obvious, is most regularly and properly placed at the foot or end of the instrument signed; but it is decided in many cases that although the signature be in the middle or beginning of the instrument, it is as binding as if at the foot; *although, if not signed regularly at the foot, there is always a question whether the party meant to be bound by it as it stood, or whether it was left so unsigned because he refused to complete it.*

*Love v. Harris*, 156 N.C. 88, 91, 72 S.E. 150, 151 (1911) (emphasis added).

In determining whether defendant signed the agreement not to compete, we find guidance in *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 423 S.E.2d 791 (1992). In that case, the plaintiff terminated his dealership agreement with the defendant Snap-On Tools. As part of the termination, the defendant presented to the plaintiff a document entitled "Termination Agreement." *Id.* at 269, 423 S.E.2d at 793. This agreement contained a printed provision binding the plaintiff to pay the difference between any amount the plaintiff owed the defendant, less any credit the plaintiff received from the defendant by turning in unused inventory. The parties wrote the terms of the plaintiff's repayment plan on the back of the document, and the plaintiff signed his name beneath this recitation of terms. Another printed provision in the document bound the parties to arbitration. The printed signature line at the bottom of the document contained the signature of one of the defendant's representatives but not the signature of the plaintiff. In reviewing the trial court's determination that there was no meeting of the minds as to the arbitration agreement in the printed document, we observed that when an "agreement is ambiguous, interpretation of the contract is a question for the fact-finder to resolve, and parol or extrinsic evidence is admissible to explain or

qualify the written instrument." *Id.* at 273, 423 S.E.2d at 795 (internal citations omitted). Because "plaintiff signed below only the added language . . . and not on the applicable signature line, an ambiguity results as to whether plaintiff agreed to all the terms contained in the Termination Agreement or merely those terms in the added sentence immediately preceding his signature." *Id.* We went on to affirm the trial court's decision that the plaintiff did not agree to all the terms in the agreement.

The evidence as to the existence of an agreement in the case at bar is ambiguous. Defendant's name is not found in any form on the signature line of the agreement; however, she did print her name at the top, ahead of the substantive portions of the agreement. Therefore, consistent with *Routh*, the fact-finder below could consider extrinsic evidence to determine whether defendant signed the document, and consistent with *A.E.P.*, we may review that extrinsic evidence independently.

Defendant testified that when she began her employment, plaintiff's office assistant handed her a number of forms. She testified that the office assistant instructed her to date and put her name on the agreement not to compete, and then took the agreement from her after she followed these instructions. Although the notarization form at the bottom of the agreement recites, "Before me personally appeared <u>Holly N. Martinez</u> to be known as the person described in and who executed the foregoing instrument, and acknowledged to and before me that <u>she</u> executed said instrument for the purposes therein expressed," defendant testified that she never discussed the agreement not to compete with any of plaintiff's employees.

A comparison of this document with other documents completed by defendant at the same time is instructive.

(a) Defendant completed in print an "AVIS EMPLOYEE RECORD," a document that sought basic personal information. This document did not contain a signature line.

(b) Defendant wrote her name in cursive script at the bottom of a "NON-DISCRIMINATION POLICY" in the space labeled "Employee."

(c) Defendant wrote her name in cursive script in the space labeled "Employee" at the bottom of a document entitled "ACKNOWLEDGMENT OF EMPLOYEE," in which defendant was asked to acknowledge plaintiff's company policies and receipt of plaintiff's company personnel manual.

NEW HANOVER RENT-A-CAR, INC. v. MARTINEZ

[136 N.C. App. 642 (2000)]

(d) Defendant printed her name on State and Federal tax forms where the forms state "Type or print your . . . name," but wrote her name in cursive script on the line calling for "Employee's signature."

(e) Finally, a document entitled, "NEW HANOVER RENT A CAR RENTAL SALES AND SERVICE AGENT COMPENSATION PACKAGE" contains three spaces at the bottom, labeled "Print Name," "Sign Name," and "Date." Defendant printed her name in the first space, signed her name in cursive script in the second space, and provided the date in the third space.

Plaintiff responded with evidence provided by Ms. Dalton, who notarized the agreement not to compete. Although the document contains a blank signature line, Ms. Dalton testified that she witnessed defendant "complete this document" before she notarized it. Ms. Dalton testified that defendant was told to read the form and, when she asked if defendant had any questions, defendant responded that she did not. Ms. Dalton further testified that when she completed the notary form, she did not notice the signature line directly above the notarization was blank.

Our review of the record reveals that the preliminary injunction was improperly issued. The evidence established that where a document requested identification information, defendant printed her name, but where a document requested a "signature" as acknowledgment and acceptance of the material or as confirmation of information requested in the document, defendant wrote her name in cursive. There was no cursive script or any writing at all on the signature line of the agreement not to compete and, therefore, no signature. Based on this evidence, we hold that plaintiff was unable to show a likelihood of success on the merits of its case. Accordingly, we need not address the other issues raised by defendant. The action of the trial court is reversed, and the case is remanded for further action consistent with this opinion.

Reversed and remanded.

Judges McGEE and HORTON concur.