IN THE MATTER OF THE WILL OF HANNAH WILLIAMS, SR.

(Filed 10 October, 1951.)

**Wills § 6—Signature of testator may appear in any part of the instrument.**

A will may be signed by testator, or by another person in his presence and by his direction, at any place in the instrument, since the statute does not require that the signature be "subscribed," G.S. 31-3, and therefore testimony to the effect that the instrument was written at the direction of testatrix and in her presence and in accordance with her wishes, and that her name appeared thereon in the beginning in the words "will of Hannah Williams, Sr., and that after it was written it was read to her and she stated that it was correct, *is held* sufficient to support a finding by the jury that the paper writing was signed in the name of testatrix by the draftsman in her presence and at her request.

In re Will of Williams.

Appeal by caveators Essie Allen Robinson and Junius L. Williams, from *Burney, J.,* at April Term, 1951, of Northampton.

Proceeding to probate in solemn form will of Hannah Williams, Sr., on issues raised by caveat filed by caveators above named.

The propounders, in their petition to the court, allege, among other things, substantially the following:

1. That Hannah Williams, Sr., late of Northampton County, North Carolina, died testate 2 March, 1922,—being at the time the owner of the real estate hereinafter mentioned.

2. That the petitioners propound for probate in solemn form a paper writing, bearing date 17 May, 1920, purporting to be the last will and testament of Hannah Williams, Sr., the original of which is on file in office of Clerk of Superior Court of Northampton County, North Carolina, and a copy of which, marked Exhibit A, is as follows:

Exhibit "A"—Hannah Williams' Will.

"Garysburg, N. C.
May 17th, 1920

"Will of Hannah Williams, Sr.
 Garysburg, North Carolina
 Northampton County

"I give the following property to the parties, or persons named below.

"To A. W. Williams, I give (2) two acres situated on the North side joining Mr. G. E. Ransom.

"To W. M. Williams, I give (2) two acres situated on the North side joining G. E. Ransom, and the (2) acres given A. W. Williams.

"To Essie Allen, I give (1) acre, situated on the North side joining G. E. Ransom, and W. M. Williams.

"To Junius L. Williams, I give (1) one acre situated on the North joining G. E. Ransom, and Essie Allen.

"To W. W. Williams, I give the house and all of the other land.

"To Mary Mason, I give ($5.00) Five Dollars in money.

"To Esta Williams, I give ($5.00) Five Dollars in money.

"To Earnest Williams, I give ($5.00) Five Dollars in money.

"I also appoint or designate W. W. Williams as Administrator of my estate without bond.

"We certify that Hannah Williams, Sr., was in her sound mind.

"Witness this May 17th, 1920.

|       |                |            |
|-------|----------------|------------|
| (s)   | L. N. Neal     | (Sealed)   |
| (s)   | M. P. Sweatt   | (Sealed)   |
| (s)   | Peter Sweatt   | (Sealed)." |

3. That theretofore said paper writing has been duly offered for and admitted to probate in common form in Superior Court of Northampton County, North Carolina, as the last will and testament of Hannah Williams, Sr., and W. W. Williams then qualified as executor thereof; and now petitioners desire and move that the probate thereof be in solemn form to the end that there may be no future controversy.

4. That petitioners are now the owners in fee simple and equitably entitled to 30/32 undivided interest in and to all the real estate devised in said paper writing, having acquired title thereto in following manner:

(a) On 21 January, 1929, Walter W. Williams, the sole residuary devisee in said paper writing, and his wife, executed a deed of trust, duly registered, to John A. Suiter, Trustee, in which they conveyed, with general warranty, all the real estate devised in said paper writing, to secure the payment of a certain indebtedness to William M. Person, with power of foreclosure in the event of default in payment thereof at maturity.

(b) Default occurred in the payment of the indebtedness, and John A. Suiter, Trustee, having been duly requested to do so, and in the exercise of the power of foreclosure, sold all the land conveyed by said deed of trust, and pursuant thereto on 8 March, 1932, executed a deed, which is duly registered, to William M. Person, as the last and highest bidder.

(c) On 6 April, 1949, William M. Person died intestate, being at the time the owner in fee and equitably entitled to and in possession of all the real estate so conveyed to him by John A. Suiter, Trustee. And petitioners, and two others named, are all the heirs at law of William M. Person, deceased, who, prior to filing the petition for probate of said paper writing in solemn form, duly requested W. W. Williams, as executor, to make application, within ten days after date of service thereof, to Superior Court of Northampton County for the probate in solemn form of said paper writing as the last will and testament of Hannah Williams, Sr., and duly notified him that upon his failure so to do, they, as persons interested in the estate in the manner as above set forth, would apply therefor to the Superior Court.

The caveators, in their caveat, set forth, among other things:

That the paper writing, Exhibit A, propounded for probate in solemn form is not the last will and testament of Hannah Williams, Sr., for that: "(a) As these caveators are informed and believe, and upon such information and belief aver, that the paper writing as aforesaid was not signed by the said Hannah Williams, Sr., nor was it signed by anyone for her or at her direction.

"(b) At the time of the alleged writing of said paper, purporting to be her last will and testament, the said Hannah Williams, Sr., was not competent to make a last will and testament.

"(c) That such paper writing purporting to be a will was obtained by undue influence and fraud."

The cause was duly transferred to Superior Court of Northampton County for trial, and was tried at April Term, 1951.

Upon the trial: Rev. L. N. Neal, "one of the witnesses to the will," being duly sworn, testified: "I am 84 years old . . . I knew Hannah Williams, Sr. . . . Hannah Williams, Sr. could not read or write." "Q. I hand you a paper writing bearing date of May 17, 1920, which purports to be the will of Hannah Williams, Sr., which has been identified by the Court Reporter as 'A.' Please examine this paper writing and state in whose handwriting it is written." Caveators object—overruled—exception. "A. I wrote this will. Mrs. Williams sent for me and Rev. Sweatt to come down to her place. She requested me to write this paper writing for her. Hannah Williams told me the purpose for which she wanted this paper writing written." Caveators object—overruled—exception. "Hannah Williams told me that she wanted me to write her will. She told me she owned the homeplace upon which she lived. She told me what she wanted to do with her property at the time I wrote this paper writing. I wrote this paper in accordance with what Hannah Williams, Sr., told me as to the disposition she desired to make of her property after her death. I wrote this paper writing by her authority and direction and in her presence . . . in her room in the house where she lived which was on her homeplace. Rev. M. P. Sweatt and another young man by the name of Sweatt were present when the paper writing was written and signed. I was present, Hannah Williams, Sr. was present and they were all present. After the paper was written, I read it over to her and asked her if it was correct. She answered, 'Yes.' She acknowledged it in the presence of me and the other witnesses. I signed the name of Hannah Williams, Sr. at the head of this paper writing in her presence and at her request. I did so in the presence of the other witnesses. M. P. Sweatt, Peter Sweatt and myself signed and subscribed the paper writing as witnesses in Hannah Williams' presence, at her request and in the presence of each other. Hannah Williams, Sr. was well and hearty, up and about, walking all over the house . . . In my opinion Hannah Williams Sr. had mind enough at the time this paper was executed to know the property she owned, who her kin people were and the claims which they made upon her and the effect of making a will. I did not see or overhear anyone coerce or compel Hannah Williams, Sr. to make this will, and she acted freely and voluntarily."

Then on cross-examination, the witness was asked these questions, to which he answered as shown:

"Q. Did you see in this paper writing where this woman signed it or not?

"A. No, I signed it for her at her request.

"Q. Is there anywhere on this paper where you signed at her request?

"A. I don't know. I think so."

And continuing in part, "At the top of the paper shows what she asked me to do." "Q. You have in this paper 'Will of Hannah Williams, Garysburg, N. C.' That is the only place you have it in the will?" "A. That is right. I put it in there to identify who she was and where she lived. That is why I put it there. I don't remember exactly the words she said to me on this occasion . . ."

Peter Sweatt, "one of the witnesses to the will," testified in pertinent part: "I knew Hannah Williams and she lived about three-quarters of a mile from me and I would see her and talk to her practically every week . . . I know W. W. Williams. He is son of Hannah Williams. He stayed with and took care of his mother as long as she lived. My name appears as a subscribing witness to the paper writing dated May 17, 1920, which purports to be the will of Hannah Williams, Sr., and is identified as 'A.' I saw it written by L. N. Neal. L. N. Neal wrote the paper at the request of Hannah Williams, Sr."

"Q. Did you hear Hannah Williams, Sr. say the purpose for which she wanted this paper writing?" Caveators object—overruled—exception.

"A. I do not remember for what purpose she said she wanted it written. Hannah Williams, Sr. told me at the time . . . that she owned the homeplace upon which she lived."

"Q. Was this paper writing written in accordance with what Hannah Williams, Sr. said she wanted to do with her property after she died?" Caveators object—overruled—exception.

"A. Yes. This paper was written by her authority and at her direction, in her room in her house. M. P. Sweatt, Rev. Neal, myself and Hannah Williams, Sr. were present when this paper was written. This paper was read to Hannah Williams, Sr. She said that was what she wanted to do with her property.

"L. N. Neal signed the name of Hannah Williams, Sr. at the top of this will in her presence, at her request and by her direction. L. N. Neal, M. P. Sweatt and I signed and subscribed this paper writing as witnesses in her presence and at her request and in the presence of each other. M. P. Sweatt was my father. He is now dead. I know his signature and that is his genuine signature to the paper writing as one of the subscribing witnesses.

"Hannah Williams was getting along and around all right and I think she was normal. In my opinion she had mind enough at the time this paper was written to know who her kin people were and their claims upon her and what property she owned and the effect of making a will. I never saw her when she did not have such mental capacity. I never

saw anyone do or say anything to coerce or compel Hannah Williams, Sr., to make this will."

The propounders offered testimony of other witnesses tending to show that, at all times prior to her death, Hannah Williams, Sr., had mental capacity to know what property she had, who her kinspeople were, their claims upon her, and the effect of making a will.

Propounders then offered in evidence the paper writing bearing date 17 May, 1920, which purports to be the will of Hannah Williams, Sr., and identified as "A," hereinabove copied.

Caveators object—overruled—exception.

Propounders further offered evidence tending to show the following:

I. That Hannah Williams, Sr., had four children—

(1) A. W. Williams, who predeceased her, leaving no children.

(2) W. M. Williams, who predeceased her, leaving no children.

(3) Elizabeth Williams Allen who predeceased her, leaving a daughter, Essie Allen Robinson; and

(4) W. W. Williams, who is living, and then in the courthouse.

II. That (1) Junius L. Williams is son of Junius L. Williams, Sr., a brother of Hannah Williams, Sr.

(2) Esther Williams, sister of Junius L. Williams, and niece of Hannah Williams, Sr., is dead.

(3) Mary Mason, sister of Esther Williams and Junius L. Williams, and niece of Hannah Williams, Sr., is dead.

(4) Ernest Williams, brother of Esther Williams, Mary Mason and Junius L. Williams, is nephew of Hannah Williams, Sr.

III. That Hannah Williams, Sr., owned her homeplace at time of her death.

And propounders also offered in evidence record of deed of trust from Walter W. Williams and wife to John A. Suiter, Trustee, and of deed from John A. Suiter, Trustee, to William M. Person, and testimony tending to show the facts pertaining to their interest in the estate as set forth in their petition as hereinabove stated, and to their request that W. W. Williams, as executor, apply to the court for probate of said paper writing in solemn form. Caveators object—overruled—exception.

Caveators offered no evidence.

At the close of evidence propounders tendered these issues, which were submitted to and answered by the jury as shown:

"1. Are the propounders persons interested in the estate of Hannah Williams, Sr.?

"Answer: Yes.

"2. If so, did the propounders notify and request W. M. Williams, Executor, to offer said paper writing for probate in solemn form as the

last will and testament of Hannah Williams, Sr. as alleged in the petition?

"Answer: Yes.

"3. If so, did W. W. Williams, Executor, fail to offer said paper writing for probate in solemn form as the last will and testament of Hannah Williams, Sr.?

"Answer: Yes.

"4. If so, was the paper writing dated May 17, 1920 and offered for probate as the last will and testament of Hannah Williams, Sr., deceased, signed and executed according to law?

"Answer: Yes.

"5. If so, did the said Hannah Williams, Sr. have mental capacity to make a will on the 17th day of May 1920?

"Answer: Yes.

"6. If so, was the execution of said paper writing procured by undue influence or fraud?

"Answer: No.

"7. Is the paper writing dated May 17, 1920 offered for probate by Elizabeth Lane and others, and every part thereof, the last will and testament of Hannah Williams, Sr.?

"Answer: Yes."

Caveators objected to submission of the first, second and third issues. Objection overruled—exception. They thereupon "requested the court to answer the fourth issue No, which the court refused to do and to which the caveators excepted."

Judgment was signed by the court in accordance with the verdict, to which caveators excepted, and appealed to Supreme Court and assign error.

*E. R. Tyler and Gay & Midyette for propounders, appellees.*

*Charles W. Williamson, Floyd T. Hall, and P. H. Bell for caveators, appellants.*

WINBORNE, J. The pivotal question here presented is this: In the light of the testimony of the two subscribing witnesses, who testified in the trial below, is the paper writing propounded for probate "signed" by Hannah Williams, Sr., within the purview of G.S. 31-3 which prescribes the requirements for formal execution of a written will with witnesses? The answer is "Yes."

In this State it is provided by statute G.S. 31-3 that "no last will or testament shall be good or sufficient, in law, to convey or give any estate, real or personal, unless such last will shall have been written in the testator's lifetime, and signed by him, or by some other person in his presence

and by his direction, and subscribed in his presence by two witnesses at least, no one of whom shall be interested in the devise or bequest of the estate . . ."

This statute is similar in purport to the statute G.S. 22-2 pertaining to contracts requiring writing, generally known as the statute of frauds, which declares that "all contracts to sell or convey any lands . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized."

That the name of the testator may be signed to the paper writing by some other person in his presence and by his direction is expressly authorized by the statute G.S. 31-3. Such is the case also in instances to which the provisions of G.S. 22-2 apply. The principle is recognized in *Devereux v. McMahon,* 108 N.C. 134, 12 S.E. 902; *In re Johnson,* 182 N.C. 522, 109 S.E. 373; *S. v. Abernethy,* 190 N.C. 768, 130 S.E. 619.

And with respect to the signing by the testator, or by "the party to be charged," as the case may be, this Court in interpreting the statutes, has held that when a signature is essential to the validity of the instrument, it is not necessary that the signature appear at the end unless the statute uses the word "subscribe." *Devereux v. McMahon, supra; Hall v. Misenheimer,* 137 N.C. 183, 49 S.E. 104; *Richards v. Lumber Co.,* 158 N.C. 54, 73 S.E. 485; *Boger v. Lumber Co.,* 165 N.C. 557, 81 S.E. 784; *Burriss v. Starr,* 165 N.C. 657, 81 S.E. 929; *Peace v. Edwards,* 170 N.C. 64, 86 S.E. 807; *Alexander v. Johnston,* 171 N.C. 468, 88 S.E. 785; *S. v. Abernethy, supra; Corp. Comm. v. Wilkinson,* 201 N.C. 344, 160 S.E. 292; *Paul v. Davenport,* 217 N.C. 154, 7 S.E. 2d 352; *In re Will of Goodman,* 229 N.C. 444, 50 S.E. 2d 34.

In the *Richards case, supra, Clark, C. J.,* writing for the Court, declared that "this has always been ruled in this State in regard to wills, as to which the signature may appear anywhere." This declaration is recognized in *Boger v. Lumber Co., supra; Burriss v. Starr, supra; Peace v. Edwards, supra; Alexander v. Johnston, supra.*

And in *Boger v. Lumber Co., supra,* it is said that "the authorities make a distinction between statutes requiring instruments to be signed and those requiring them to be subscribed, holding with practical unanimity, in reference to the first class, that it is not necessary for the name to appear at any particular part of the instrument, if written with the intent to become bound; and as to the second class, that the name must be at the end of the instrument."

In the light of these principles, the testimony of the subscribing witnesses, in the present case, is sufficient to support a finding by the jury that the paper writing in question was signed in the name of Hannah Williams, Sr., by Rev. L. N. Neal in her presence and at her request,

within the meaning of the statute G.S. 31-3. The words "will of" preceding the name of Hannah Williams, Sr., given their ordinary meaning, tend to identify the paper writing as her will, and to indicate that she knew it to be her will.

All other questions stated in the brief of appellants have been given due consideration, and each is found to be without merit.

Hence in the judgment below we find

No error.