IN THE MATTER OF THE WILL OF HUBERT E. ROBERTS, DECEASED.

(Filed 29 January, 1960.)

**1. Wills § 7—**

A dispositive paper writing signed by testator and witnessed at his request and in his presence by two witnesses, although they signed it on separate occasions, is sufficient to constitute the instrument an attested will, it not being required that the witnesses sign in the presence of each other.

**2. Wills § 8—**

An instrument in the handwriting of testator. disclosing dispositive intent, and found after his death in his safe, is sufficient to constitute the instrument a holographic will, and the presence of a printed letterhead at the top of the page is immaterial.

**3. Wills §§ 6, 8—**

While the provisions of the statute in regard to the execution of a will are mandatory and not directory and must be strictly complied with, the statutory provisions must at the same time be reasonably construed so as to effectuate the intent of the statute and not to defeat it.

**4. Wills § 22—**

The burden is upon propounder to establish by the greater weight of the evidence that the paper offered for probate was executed in compliance with statutory requirements. G.S. 31-3.

**5. Wills §§ 6, 8—**

It is not required that a will be on a single sheet of paper or that the sheets constituting the instrument be physically attached, or that the signature of the testator appear on each sheet, but it is sufficient if the evidence discloses that the separate sheets constitute but a single instrument. In a holographic will sequence of the language is of less significance

than in an attested will since proof of the handwriting of the testator and his signature establishes the dispositive provisions as a will.

**6. Wills § 24— Evidence held sufficient to warrant peremptory instruction as to validity of holographic will.**

Evidence tending to show that four sheets, bearing the same date, each sheet being in the handwriting of testator, were found folded together, that the folds of all four sheets coincided, and that the four sheets considered together disclosed a coherent and complete testamentary disposition of testator's estate, and that his signature appeared at the end, *is held* sufficient, notwithstanding that a few words on one sheet, also in testator's handwriting, were in a different ink, to warrant a peremptory instruction by the court that if the jury found by the greater weight of the evidence the facts to be as all the evidence tended to show to answer the issue in the affirmative, caveators having offered no evidence in support of their contentions to the effect that it was impossible to tell whether any sheets had been removed.

**7. Trial § 29—**

When all the evidence justifies but a single inference in favor of the party having the burden of proof, an instruction to find the issue in the affirmative if the jury finds the evidence to be true will be upheld. The distinction is noted between a directed verdict and a peremptory instruction.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by caveators from *Farthing, J.,* March Term, 1959, of MADISON.

The jury having answered the issue *devisavit vel non* in favor of the propounders, it was adjudged that the paper writing, and every part thereof, theretofore probated in common form and offered in evidence as Exhibit A, is the last will and testament of Hubert E. Roberts, deceased.

Hubert E. Roberts died November 27, 1956, at the age of 61 or 62. On November 30, 1956, Exhibit A was probated in common form and administratrices c. t. a. were appointed.

Hubert E. Roberts had been married but left no lineal heirs. His wife had died in 1947. The only child, a son, had been killed in 1945 while serving in the U. S. Air Force.

The caveators are twelve collateral heirs, first and second cousins, of Hubert E. Roberts. One resided in Marshall, N. C., four resided in other sections of North Carolina; and the remaining seven resided either in Washington, D. C., or in Maryland.

The propounders are Mrs. Vena C. Davis, Hattie T. Teague and Julia R. Elam, as administratrices c. t. a. and individually, and Lucille Roberts and Grace Conner, who filed a joint answer to the

caveat, and The Shriner's Hospital for Crippled Children, a corporation, for which a separate answer was filed.

All interested persons were cited and made parties to the proceedings.

Exhibit A (the original was filed here for inspection) consists of four sheets, identified in the evidence as Sheets 1, 2, 3 and 4. The four sheets are the same size, 8½″ by 11″, the same kind of paper and bear this letterhead: "ROBERTS PHARMACY — Established 1882 — The Rexall Store — Phone 6 — Marshall, N. C." The writing on each of the four sheets is set forth below:

"Sheet 1

"7/14/5

"Last will and testament.

"I Hubert E. Roberts of Marshall Madison County, N. C. Being of sound mine and capable of executing a valad deed or contract do make, Publish and declare this to be my last will and testament Hereby revoking all other wills or codicils herefore made by me.

"I give to my best friend and helper Mrs. Vena Davis, $5000.00. The house on hill st. known as the Church house. The stock and fixtures of Roberts Pharmacy. The two pictures in Dining room, The girl in prison and the Driving of the cows.

"I give to my cousin Mrs. Hillard Teague $5000.00. The two companion pictures in hall The Deers.

"Sheet 2

"7/14/51

"I leave in care of Marshall Presbitiran church $5000.00 for the Interest to be used to keep the Roberts Cemetary mowed and in repair. This should be done once weekly during sumer, for this trouble I give the Church 5% of the Interest.

"I leave in care of the Shrine Hospital Greenville, S. C., for the period of 25 years, the rent from the Roberts Pharmacy building and the Dodson building on Main St. This to be collected by them and the building to be kept in repair and first class condition and not to be rented to Jews. A sealed letter will be left with this will to be opened in 25 yrs.

"Sheet 3

"7/14/51

"I give to Lucille Roberts: The lot on Roberts Road. The Rector house to Hill St. Also picture head in bed room upstairs.

"I give to Julia Roberts Elam $5000.00 and one cluster diamond ring.

---

---

"Mrs. O. C. Rector. One picture the 3 horse Heads, one Diamond ring, vase in Hall.

"Mrs. J. H. Sprinkle, One diamond Ring, one chair with arms made by my Grandfather, The Long Pitcher in dining room.
                    "Sheet 4

"My home on the hill will go to Mrs. Bob Davis as long as she will keep Frank Fowler's room as is today and all the ruddunts of my estate to her Mrs. Bob Davis.

"I leave Miss Grace Connor $1000.00

                              "(s) H. E. Roberts
                                 7/14/51

"Witness
  (s) Claude Sawyer
  (s) Eloise Ball"

The caveat alleged (a) undue influence by Mrs. Vena C. Davis, and (b) mental incapacity, but no evidence was offered to support these allegations. The caveat alleged further: "(c) That said purported will is not signed in the handwritting of the deceased. That said several pages of said will were not written prior to the affixing of the signature. That said purported will had been opened by others than the deceased and tampered with and altered."

"Mrs. Vena C. Davis" and "Mrs. Bob Davis" are one and the same person.

The caveators offered no evidence. When the propounders had offered their evidence, the caveators rested and moved for a directed verdict. Their motion was denied. The court submitted the issue *devisavit vel non* to the jury under this (peremptory) instruction: " . . . if you are satisfied from the evidence that you have heard, that the evidence is true, and find the facts to be as the evidence tends to show in this case, you will answer the issue submitted to you YES. If you fail to so find, you will answer the issue NO."

Propounders' evidence will be set forth in the opinion.

On appeal from said judgment, the caveators assign as error (1) the denial of their motion for a directed verdict and (2) the court's said peremptory instruction to the jury.

*Uzzell & Dumont and A. E. Leake for caveators, appellants.*

*J. Y. Jordan, Jr., H. Kenneth Lee and Robert P. Smith for propounder The Shriner's Hospital for Crippled Children, appellee.*

*Mashburn & Huff, by Joseph B. Huff, and Clyde M. Roberts for other propounders, appellees.*

BOBBITT, J. Three witnesses testified that all writing on the four sheets comprising Exhibit A, except the signatures of Claude Sawyer and Eloise Ball on Sheet 4, was in the handwriting of Hubert E. Roberts, and a witness testified that Exhibit A was found among the valuable papers and effects of Mr. Roberts in the inner compartment of his safe.

Two witnesses testified that the words "Will of H. E. Roberts," appearing on the envelope, Exhibit B, referred to below, were in the handwriting of Hubert E. Roberts. This envelope was not offered for probate.

Claude Sawyer, aged 69, testified: He had known Mr. Roberts "about all of his life" and, in the period before his death, had seen him "most every day." In response to Mr. Roberts' request, he "went back of the prescription counter." Mr. Roberts stated: "I want you to witness my will." Mr. Roberts "signed it, dated it, and handed me his pen, and I signed it over here on the left." Mr. Sawyer identified Mr. Roberts' signature and his own signature on Sheet 4 of Exhibit A. On cross-examination, Mr. Sawyer testified: He and Mr. Roberts were the only persons present. "There were several sheets . . . as many as three or four sheets." "He (Mr. Roberts) laid all of the sheets down together. That's the one (referring to Sheet 4) I signed. He did not read his will to me."

Mrs. Eloise Ball Riddle testified: She (then Eloise Ball) worked for Mr. Roberts from May, 1950, through October, 1951. She identified her signature and the signature of Mr. Roberts on Sheet 4 of Exhibit A. On one occasion, while she was working in the drugstore, Mr. Roberts acknowledged before her his signature on Sheet 4 of Exhibit A. ". . . I could not say that I remember signing his will, because I signed several papers for him and witnessed his signature, and he did not tell me I was witnessing his will." The incident took place "in the prescription room of the drugstore." No one was present other than she and Mr. Roberts.

A witness testified that Robert Davis, husband of Mrs. Vena C. Davis, was a first cousin of Hubert E. Roberts; and that Mrs. Garfield Davis, the mother of Robert Davis, was "the only living aunt" of Hubert E. Roberts.

If the four sheets constitute one complete and integrated document, the evidence was positive and uncontradicted that Exhibit A was executed in accordance with statutory requirements as an attested will *and* as a holographic will. G.S., Vol 2A, Recompiled 1950, § 31-3.

Sheet 1 bears the date, "7/14/5," and each of Sheets 2, 3 and

4 bears the date, "7/14/51," in the handwriting of Hubert E. Roberts. Mrs. Riddle did not work for Mr. Roberts after October, 1951. While it does not appear that Chapter 1098, Session Laws of 1953, now G.S. 31-1 *et seq.*, effects any statutory change relevant to the case *sub judice,* it is noted that Section 16 of said 1953 Act provides: "This Act does not have the effect of rendering invalid any will executed or probated prior to July 1, 1953."

The fact that Mr. Sawyer and Mrs. Riddle signed as witnesses on separate occasions is immaterial. Both signed as witnesses in the presence of Mr. Roberts. It is not required that subscribing witnesses sign in the presence of each other. *In re Will of Franks,* 231 N.C. 252, 255, 56 S.E. 2d 668, and cases cited.

Caveators contend the evidence is not sufficient to support a finding that *the four sheets* constitute a single document executed by Hubert E. Roberts as his last will and testament; but, if considered sufficient for submission to the jury, the evidence did not warrant the peremptory instruction.

The only testimony as to the circumstances under which the four sheets comprising Exhibit A were found and the condition thereof when found is the testimony of Charles Mashburn. Mr. Mashburn, an attorney at law and resident of Marshall, had been employed by Mrs. Vena C. Davis to represent her in connection with the Hubert E. Roberts' estate.

*On direct examination,* Mr. Mashburn testified, in substance, as follows: Mr. Roberts had, in his drugstore, "a large steel safe." The outer door had a combination lock. An inner compartment was locked by key. On or about November 29, 1956, two days after Mr. Roberts' death, Mr. Mashburn, in company with Mrs. Vena C. Davis and Mrs. Clyde Roberts, went to the safe. The inner compartment was locked. Mr. Mashburn obtained the key, which was on Mr. Roberts' key ring, and opened the inner compartment. Mr. Mashburn found, "in the inner locked compartment of the safe," along with insurance policies, Series E. Bonds, keepsakes of Mr. Roberts' son, receipts, *etc.,* the envelope, Exhibit B, bearing the words, "Will of H. E. Roberts," which contained, "folded together," the four sheets comprising Exhibit A. In the outer portion of the safe, there were "a large group of narcotics and various things a duggist would keep locked up."

*On cross-examination,* Mr. Mashburn testified, in substance, as follows:

He knew Mr. Roberts but was not his attorney. He had heard Mr. Roberts had been sick and "in the hospital in Asheville some-

time prior to his death." He did not know whether Mrs. Davis was in charge of the store in Mr. Roberts' absence. He did not recall whether the outer door of the safe was open or closed, locked or unlocked; and he was not sure whether Mrs. Davis gave the key to him or whether it was in the store. The four sheets of paper, Exhibit A, "were in the same condition when (he) found them that they are in now." They were not fastened together, "(j)ust folded together."

Additional testimony of Mr. Mashburn, on cross-examination, was as follows: "I am not sure whether the envelope marked EXHIBIT B is in the same condition as when I found it in the safe. I am not positive as to whether or not the envelope had been opened. However, this piece of Scotch tape was on there at the time. I don't recall whether or not the cross ink marks on the back were on there at the time. I don't recall whether it had been split open at the top. It is split open now. I would not know whether it had been previously opened prior to the Scotch tape being put on it. I could not tell from this whether or not the Scotch tape is over the ink cross-marks. I don't believe the will was read at that time in the drugstore. I believe it was carried to Mr. Roberts' office or to the Clerk of Court's office. I believe that I took the will out of the safe and carried it to Mr. Roberts' office before the Clerk ever got there. I don't recall that we notified the Clerk to come to the drugstore. I don't recall that the Clerk did go to the drugstore. I don't recall what the condition of the envelope was when the Clerk went to Mr. Roberts' office. . . . I believe that I first read the will in Clyde Roberts' office."

Inspection of (original) Exhibit B discloses: It is a white stamped envelope, size 4¼" by 9½"; and on the front, in the upper left corner, are the printed words: "After 5 days, return to ROBERTS PHARMACY, Box 2, MARSHALL, N. C." In the upper right corner, part of the envelope itself, is three cents uncancelled United States postage. The words, "Will of H. E. Roberts," appear on the front. The flap is now firmly sealed to the back of the envelope. It appears that, apart from the glue or other adhesive on the flap, it was sealed by Scotch tape, a portion of which remains, over *the line* where the edge of the flap contacts the back of the envelope. Crossing said line, there are three "X" marks, in ink. While there is no evidence relating thereto, it may be inferred from the physical appearance that these "X" marks, parts of which are obscured, were made prior to the sealing of the envelope with Scotch tape. It appears that the top of the envelope, now open, was opened by cutting or tearing or both.

Inspection of (original) Exhibit A discloses: The four sheets are now fastened together by a staple in the upper left corner. Near this staple, on each of the four sheets, there are several holes, ostensibly made by stapling or attempted stapling. (Note: None of the evidence relates to these holes or as to when and under what circumstances the four sheets were fastened by the staple now holding them together.) All handwriting on Sheets 1, 2 and 4, and also the handwriting on the front of the envelope, is in light blue ink. As to Sheet 3, the date, "7/14/51," the words "I give to Lucille Roberts," and the words, "I give to Julia Roberts," are in light blue ink. All other handwriting on Sheet 3 is in darker blue ink.

The right to dispose of property by will is statutory. *Peace v. Edwards,* 170 N.C. 64, 86 S.E. 807; *In re Will of Crawford,* 246 N.C. 322, 98 S.E. 2d 29. "The provisions of the statute are, of course, mandatory and not directory, and therefore there must be a strict compliance with them before there can be a valid execution and probate of a holograph script as a will; but this does not mean that the construction of the statute should be so rigid and binding as to defeat its clearly expressed purpose. It must be construed and enforced strictly, but at the same time reasonably." *In re Will of Jenkins,* 157 N.C. 429, 435, 72 S.E. 1072; *Alexander v. Johnston,* 171 N.C. 468, 88 S.E. 785.

Upon the issue *devisavit vel non,* the burden of proof was on the propounders to establish, by the greater weight of the evidence, that the paper writing offered for probate, Exhibit A, was executed in compliance with requirements of G.S. 31-3. *In re Will of Morrow,* 234 N.C. 365, 67 S.E. 2d 279; *In re Will of Chisman,* 175 N.C. 420, 95 S.E. 769; *In re Will of Hedgepeth,* 150 N.C. 245, 63 S.E. 1025.

This Court, opinion by *Allen, J.,* in *In re Swaim's Will,* 162 N.C. 213, 78 S.E. 72, Ann. Cas. 1915A 1207, which involved the probate of two separate sheets *as an attested will,* quoted, with approval, from the opinion of *Chief Justice Gibson* in *Wikoff's* Appeal, 15 Pa. 281, 53 Am. Dec. 597, the following: "It is a rudimental principle that a will may be made on distinct papers, as was held in *Earl of Essex's* case, cited in *Lee v. Libb,* 1 Show. 69. It is sufficient that they are connected by their internal sense, by coherence or adaptation of parts."

The general rules have been stated as follows: "A will need not be written entirely on one sheet of paper, but may be written on several separate sheets, even though there is confusion in the order of their arrangement, provided the sheets are so connected together that they may be identified as parts of the same will. A valid will

may be written on several sheets of paper without attaching them where the principle of integration may be applied. While connection by the meaning and coherence of the subject matter is sufficient, as physical connection by mechanical, chemical, or other means is not required, although it is sufficient when made, in the absence of such physical connection, the papers must be identified as one will by their internal sense, by coherence, or adoption of the several parts. Where there is sufficient credible proof of the identity of disconnected sheets propounded as one will, neither the physical nor coherent rule of attachment is applicable." 94 C.J.S., Wills § 162; 57 Am. Jur., Wills § 224; Thompson on Wills, Third Edition, § 105; Page on Wills, Lifetime Edition, § 242; Annotation: "Validity of will written on disconnected sheets," 38 A.L.R. 2d 477, where many decisions, involving variant factual situations, are discussed.

Where a will is written on two or more separate sheets, the statute, G.S. 31-3, does not require that they be physically attached or that the signature of the testator appear on each sheet. It is sufficient if the signature of the testator appears in any part of the will. *In re Will of Williams*, 234 N.C. 228, 66 S.E. 2d 902, and cases cited. In *Alexander v. Johnston, supra,* the signature of the testatrix did not appear on the sheet containing the dispositive provisions but the words, "Julia W. Johnston Will," were on the "lightly sealed" envelope in which the sheet was found; and the sheet and envelope were established as the holographic will of Julia W. Johnston.

In *In re Will of Lowrance*, 199 N.C. 782, 155 S.E. 876, a holographic will consisting of two sheets, folded together but not attached, was established. The two sheets were found *in a sealed envelope* on which appeared the words, "My Will," in the handwriting of the testatrix. This Court, rejecting caveators' principal contention, held that an otherwise valid holographic will was not invalidated because printed matter, in the nature of a letterhead, appeared on each of the two sheets.

In the *Swaim* case, which involved *an attested will*, the bases upon which the two sheets were held to constitute a single document were these: (1) The testimony of Mr. Gwaltney, the draftsman, "established the fact that the two sheets were written at the same time, that both were read to the testator as his will, and were present at the time of the execution . . ." (2) ". . . the papers themselves bear intrinsic evidence that, while separate, they were tacked together in the mind of the testator," it appearing that the fourth page of the first sheet, "concludes in the middle of an item of the will and a description of a tract of land, which is concluded on the first page

of the second sheet, and both sheets are in the handwriting of the same person." In the *Lowrance* case, which involved *a holographic will*, there was no verbal sequence, that is, "the finishing on one sheet of a sentence begun on another," 38 A.L.R. 2d 486, but both sheets were in the handwriting of the testatrix, folded together, and found in the sealed envelope.

In an attested will, the primary significance of such verbal sequence is that it tends to identify the unsigned sheets as constituent parts of the testator's will. In a holographic will, such verbal sequence is of less significance; for, in such case, the relationship between the testator and the writing is established by the fact that each of the sheets is in the handwriting of the testator. *Alexander v. Johnston, supra.* Here, each of the four sheets comprising Exhibit A is identified by Hubert E. Roberts in his own handwriting. True, the four sheets are not connected by verbal sequences; but the provisions of each sheet do disclose unequivocally that such sheet was intended by the writer (Hubert E. Roberts) to be a constituent part of his will.

The *intrinsic evidence* that the four sheets are constituent parts of a single document includes the following: (1) Each of the four sheets bears the same date. (2) Each sheet, being in the handwriting of Hubert E. Roberts, is unmistakably identified. (3) The four sheets, when found, were folded together; and the originals indicate plainly that the crease marks, where folded, are identical on all four sheets. (4) The four sheets, considered together, disclose a coherent and complete testamentary disposition of his estate.

It is idle to speculate as to why the writing on Sheet 3 is partly in light blue ink and partly in darker blue ink. The significant fact is that all is in the handwriting of Hubert E. Roberts. Moreover, it is noteworthy that the date, "7/14/51," is in light blue ink, the same as on the other sheets and on the envelope.

It is noted that Mrs. Vena C. Davis was a principal and the residuary legatee (Sheets 1 and 4) under the terms of Exhibit A. It is further noted that her interest as residuary legatee (Sheet 4) is not increased, but is substantially impaired, by the dispositive provisions on Sheets 2 and 3.

Even so, caveators contend that "it is impossible to tell whether or not any sheets had been removed." In their brief, they refer to the holes now appearing in the upper left corner of each sheet, ostensibly made by staples (later removed) or by attempted stapling, as indicating that one or more sheets, once a constituent part of Exhibit A, had been removed. Absent evidence with reference thereto, we do

not think such inference may be reasonably drawn from the staple holes *now appearing* thereon.

Caveators contend it appears that the envelope, Exhibit B, had been opened before Mr. Mashburn found it. Conceding that the envelope, Exhibit B, had been opened before it was found by Mr. Mashburn (for there is no evidence it was then sealed), the question as to who opened it and under what circumstances is not answered by the evidence. Can it be reasonably inferred that some person other than the testator opened the envelope and withdrew therefrom another sheet that was a constituent part of Mr. Roberts' will? We think not.

Bearing further on caveators' said contentions, Mr. Sawyer's testimony is to the effect that when he witnessed Mr. Roberts' will there were "as many as three or four sheets." This testimony, competent under *In re Swaim's Will, supra,* and admitted without objection, while it does not specifically identify Sheets 1, 2 and 3, does dispel the idea that there were more than four sheets and that one or more had been removed. In short, we do not think a reasonable inference may be drawn from the evidence that one or more sheets, other than the four sheets comprising Exhibit A, ever constituted constituent parts of Mr. Roberts' will.

True, it would seem that Mr. Mashburn might have taken more careful notice of what occurred on the occasion Exhibit A was found in the inner compartment of Mr. Roberts' safe. This is especially true in the light of hindsight. Even so, this is a proceeding *in rem;* and the solemn act of Hubert E. Roberts may not be nullified on the ground that Mr. Mashburn was unable to answer certain questions as to what he might have observed. It may be conceded that the cross-examination of Mr. Mashburn had a bearing upon the credibility of his testimony; but, under a peremptory instruction, the credibility of the testimony is for determination by the jury. Nothing in the record indicates that counsel for caveators did not argue or have opportunity to present their arguments as to the credibility of the testimony prior to the court's submission of the issue to the jury for its determination.

"The rule is that where all the evidence bearing on an issue points in the same direction and justifies as the single inference to be drawn therefrom an answer in favor of the party having the burden of proof, an instruction to find in support of such inference if the evidence is found to be true, will be upheld. This is a peremptory instruction, as distinguished from a directed instruction." *Peek v. Trust Co.,* 242 N.C. 1, 11, 86 S.E. 2d 745, and cases cited.

The only reasonable conclusion to be drawn from the facts as

shown by the testimony and by the documentary evidence is that the four sheets comprising Exhibit A constitute the last will and testament of Hubert E. Roberts. Hence, the peremptory instruction was appropriate.

No error.

HIGGINS, J., took no part in the consideration or decision of this case.