IN THE MATTER OF: THE WILL OF ALFRED T. SESSOMS, Deceased.

(Filed 12 April, 1961.)

**1. Wills § 6—**

Where a will is written on two separate sheets, it is not required that the sheets be physically attached or that the signature of the testator appear on each sheet, and if the signature of testator appears on the second page, it is sufficient, G.S. 31-3.3.

**2. Same: Wills § 25—**

Where the evidence tends to show that the paper writing probated consisted of two sheets of paper, that the typewritten words thereon were typed at three separate times, but there is testimony that the instrument offered for probate was the paper which was witnessed and signed as a will in the presence of the witness, and that the same two pages were stapled together when delivered to the clerk for probate, there is sufficient credible proof of the identity of the sheets as one will, and it is not required that the court instruct the jury upon the rules of physical attachment or identification as one instrument by internal sense or coherence.

**3. Wills § 25—**

Where there is no evidence tending to show any alterations in the dispositive parts of the instrument offered for probate, the only material alteration being in the designation of the executor prior to the execution of the instrument by the testator, it is not prejudicial for the court to fail to charge on the principle of law in regard to alterations.

**4. Same—**

The charge of the court in this case is held to have stated caveators' evidence in detail and to have instructed the jury upon what circum-

stances the issue should be answered in the negative, and caveators' contention that the jury was not given an opportunity to make a finding favorable to them is untenable.

**5. Wills § 26—**

Where the only contention is as to whether the paper writing propounded was executed according to the formalities required by law, the answer of the jury to the issue directed to this question determines the answer to the issue as to whether the paper writing is a valid will, and the court properly instructs the jury that if they answer the first issue in the affirmative they should answer the second issue in the affirmative also, and that if they answer the first issue in the negative, the second issue should also be answered in the negative.

APPEAL by caveators from *Paul, J.,* September 1960 Term of SAMP-SON.

Issue of *devisavit vel non,* raised by a caveat to the will of A. T. Sessoms, the same person as Alfred T. Sessoms.

A. T. Sessoms, a resident of Sampson County, died on 4 January 1960. His heirs and distributees were his widow, and a son and daughter born of a former marriage. On 25 January 1960 O. B. Tew, Jr., named executor therein, offered for probate as A. T. Sessoms' will an attested paper writing. The instrument was probated in common form, and recorded in Will Book 13, page 267, in the office of the clerk of the Superior Court of Sampson County. This instrument devised and bequeathed to his widow, Inez Sessoms, in fee simple all of his property, real, personal and mixed. On 21 April 1960 Beatrice Sessoms Spell, a daughter, and R. S. Sessoms, a son, filed a caveat thereto on the alleged ground that the instrument is not the last will and testament of their father, A. T. Sessoms. Thereupon the proceeding was transferred to the Superior Court docket for trial.

During the trial of the caveat, and while propounder was introducing his evidence, the caveators stipulated that they did not question the mental capacity of A. T. Sessoms to execute the instrument, and further that the instrument "was not obtained by reason of undue influence."

The following issues were submitted to the jury without objection, and answered by it as indicated:

"1. Was the paper writing propounded, bearing date of March 4, 1955, executed by Alfred T. Sessoms, according to the formalities of law required to make a valid last will and testament?
Answer: Yes.
"2. Is the last will and testament referred to in Issue No. 1,

propounded in this cause, and every part thereof, the last will and testament of Alfred T. Sessoms, deceased?
     Answer: Yes."

The court entered judgment in accord with the verdict adjudging and decreeing that the last will and testament of Alfred T. Sessoms, deceased, is that certain paper writing heretofore offered for probate and probated in common form in words and figures as recorded in Will Book 13, at page 267, in the office of the clerk of the Superior Court of Sampson County.

From the judgment, caveators appeal.

*Butler & Butler by Edwin E. Butler for Propounder, Appellee.*

*Nance, Barrington, Collier & Singleton for R. S. Sessoms, Caveator, Appellant.*

*Hubbard and Jones by Howard H. Hubbard for Beatrice Sessoms Spell, Caveator, Appellant.*

PARKER, J.  Caveators have no assignments of error as to the evidence. They have three assignments of error, other than two formal ones, and all three are to the charge of the court to the jury.

Propounder's evidence tends to show the following facts: A. (Alfred) T. Sessoms was a business man engaged in various activities, farming, sale of gasoline, operation of a cafe and a store, and had a franchise for Linen White bleach covering three states. He did business and made deposits in the The Scottish Bank in Salemburg. A. T. Sessoms was twice married. Caveators are children of his first marriage. A. T. Sessoms married his second wife, Inez, about 1943: no children were born of this marriage. Inez Sessoms took an active part in the operation of her husband's business affairs, working also in the fields, at times seven days a week, and helped him accumulate a lot of property. A. T. Sessoms was not a strong man, and could not do too much labor. He carried a number of different accounts in The Scottish Bank in Salemburg. Mrs. Inez Sessoms had the right to sign his name to cheques on these accounts, did so, and her writing was very similar to his. These cheques were signed A. T. Sessoms.

One J. V. Baggett, who attended the Law School at the University of North Carolina and is director of admissions and public relations at Edwards Military School in or near Salemburg, helped A. T. Sessoms on Saturdays in Sessoms' office with his books, correspondence, and tax work. About 1954 A. T. Sessoms told Baggett that he wanted him to write a will for him and his wife, Inez Sessoms; that "he wanted

In Re Will of Sessoms.

to will everything to his wife, and a will for her willing everything to him." Thereafter Baggett wrote with a typewriter a will of two pages for A. T. Sessoms as requested, leaving everything to his wife. It seems from the record, and a photostatic picture of the instrument probated in common form filed with the record, that all the dispositive parts of the will consisting of Items 2, 3 and 4 (Item 1 provided for the payment of his debts), were written on the first page, and on the second page Inex Sessoms, A. T. Sessoms' wife, was appointed as executrix. About a year and a half or two years later A. T. Sessoms told Baggett his wife, Inez Sessoms, was not experienced in business matters of that kind, and he wanted to change his will, and appoint Mr. O. B. Tew, Jr., as executor. Tew was then and is now cashier of The Scottish Bank in Salemburg. Baggett called Tew asking if he would accept as executor, and Tew replied "Yes." Whereupon, Baggett unstapled the two pages, took the second page out, rewrote the second page of the instrument on 4 March 1955 constituting and appointing O. B. Tew, Jr., as executor, restapled the first page and the rewritten second page, and seeing that the second rewritten page was about an inch longer than the first page, he cut off that amount so the two sheets would be the same length, and gave the two page stapled instrument back to A. T. Sessoms. Baggett did not see the instrument again until after A. T. Sessoms' death.

In about October or November 1958 A. T. Sessoms came into The Scottish Bank in Salemburg bringing his will, and asked O. B. Tew, Jr., to read it, and see if he thought it was all right. Tew read it, and in his opinion it looked all right. Sessoms talked about his son and his wife's brother, and said he wanted to add something to his will. Tew testified: "He (Sessoms) told me Mrs. Sessoms' brother John had bothered him a lot. He was a bad drinker and would run through with anything he got. He said, 'I've worked mighty hard to get what I have, my wife and I together. I don't want it thown away. Whatever John gets will just go to the wind. My boy is the same way.'" After making those statements, Sessoms asked Tew if he would put an addition in his will. Tew told him he would get Geraldine Hudson, who worked in the bank, to typewrite the addition he wanted in his will. Whereupon, she wrote with a typewriter Item 5 on the first page of the instrument, which reads as follows: "It is my will and order that at my death R. S. Sessoms and John A. Sessoms shall not receive any part of my estate whatsoever unless the same shall first be approved by my Executor." After it was typed, Sessoms and Tew read Item 5. After Sessoms read it, Sessoms asked Tew whom he could get to witness his will. Tew told him he could get Miss Hudson

and L. A. Bethune, who were younger than Sessoms and would live longer than he did. Sessoms said "that is fine." Then in Sessoms' presence Tew asked them to witness Sessoms' will. Whereupon, A. T. Sessoms in the presence of Miss Hudson, L. A. Bethune and O. B. Tew, Jr., signed the paper writing, and Bethune and Miss Hudson then in Sessoms' presence and in the presence of each other signed the instrument as witnesses. Miss Hudson made no corrections in the instrument, and merely typewrote Item 5 on the first page. She signed the instrument as Jerlene Hudson. She was married in June 1959.

At A. T. Sessoms' death this instrument was found in his lockbox at the bank.

Rev. G. N. Ashley, president of Pineland College and Edwards Military School for a while, preached in the Salemburg community for 23 years. He knew A. T. Sessoms intimately, and knows his signature. In his opinion, the signature on the instrument on the right side on the second page probated in common form is that of A. T. Sessoms.

This is a copy of the written instrument:

PAGE 1

"NORTH CAROLINA
SAMPSON COUNTY

LAST WILL AND TESTAMENT

"I, ALFRED T. SESSOMS, of Sampson County, North Carolina, being of sound mind and memory, but considering the uncertainty of my earthly existence, do make and declare this my Last Will and Testament, to wit:

"1st. My executrix, hereinafter named, shall give my body a decent burial, suitable to the wishes of my friends and relatives, and pay all funeral expenses, together with all my just debts, out of the first moneys that shall come into her hands, belonging to my estate.

"2nd. I will and bequeath to my beloved wife Inez Sessoms all my real estate, consisting of the two stores at the northwest corner of the North Carolina Highway No. 24 intersection with the Autry-ville-Clement Highway, my home on the east side of the street leading from the said intersection to the Atlantic Coast Line Railroad Depot, and my farm land in Beaverdam Township, Cumberland County, North Carolina; said real estate to be held by my said wife in fee simple estate.

"3rd. I will and bequeath to my beloved wife Inez Sessoms all my personal property of every description, including all my household and kitchen furniture, automobiles, trucks, book accounts, goods and stock in my stores wherever found, cash in hand and in bank,

stocks and bonds, and any and all other personal property of any kind wherever found; said personal property to be hers absolutely in fee simple.

"4th. All the residue of my estate, real, personal, and mixed, not hereinbefore devised or bequeathed, I will and devise to my said beloved wife Inez Sessoms in fee simple forever.

"5th. It is my will and order that at my death R. S. Sessoms and John A. Sessoms shall not receive any part of my estate whatsoever unless the same shall first be approved by my Executor.

PAGE 2

"I hereby constitute and appoint O. B. Tew, Jr., my Executor to execute this my Last Will and Testament according to the true intent and meaning of the same, and every part or parcel thereof, and to act without bond, hereby revoking and declaring utterly void any and all other Last Wills and Testaments by me heretofore made.

"This the 4th day of March, 1955.

A. T. SESSOMS (SEAL)

Signed, sealed, published and declared by the said Alfred T. Sessoms to be his Last Will and Testament in the presence of us, who, at his request and in his presence, and in the presence of each other, do affix our names as witnesses thereto.

JERLENE HUDSON
L. A. BETHUNE"

Caveators offered evidence in substance: James Calvin Sessoms, a brother of A. T. Sessoms, and Beatrice Sessoms Spell, a daughter of A. T. Sessoms, knew A. T. Sessoms' signature, and in their opinion the name A. T. Sessoms appearing on the second page of the purported will is not in the handwriting of A. T. Sessoms. In the opinion of Wilton Spell, husband of Beatrice Sessoms Spell, the name A. T. Sessoms appearing on the second page of the purported will is not in the handwriting of A. T. Sessoms, but the name of A. T. Sessoms was written by his wife, Inez Sessoms.

L. A. Kelly, held by the court to be an expert witness in the field of indentification of documents, testified in substance: The texture of the two pages of the purported will was different: page two was a heavier and coarser type paper than page one, and there was a difference in the color of the two sheets of paper. From his examination and tests it is his opinion that the first four paragraphs on the

first page of the purported will were not written with the same typewriter as paragraph 5 on that page; that page two was not written with the same typewriters which were used in writing page one. In other words, it is his opinion there were three different writings on the two pages of the purported will.

W. D. Hall is sheriff of Sampson County. Shortly after A. T. Sessoms' death he and Captain J. C. Sessoms, a brother of A. T. Sessoms, with a photostatic copy of the purported will of A. T. Sessoms, went to J. V. Baggett's home. Baggett examined the photostatic copy of the purported will, and said he wrote the first four items on the first page, but did not write Item 5 on the first page and did not write the second page, and did not know who wrote Item 5 and the second page. Baggett, according to Hall's testimony, further said A. T. Sessoms on one occasion asked him to make an addition to his will or write a new will, but he never did. According to Captain Sessoms' testimony, Baggett said A. T. Sessoms called him in one day, "and asked him if he wanted to change his will, and he made some mental notes or some, some short scratch pad notes; that my brother looked at the will and said, 'No, it's just like I want it; don't change it'." Baggett also said the signature on the purported will looked like it could have been a traced signature, but that A. T. Sessoms' and Mrs. Sessoms' signatures were so much alike they were hard to detect. After talking to Baggett Sheriff Hall talked to O. B. Tew, Jr., who said he did not know who had written Item 5: "he knew it was like Mr. Sessoms intended for it to be, but he did not know who wrote it."

J. C. Moore, clerk of the Superior Court of Sampson County, testified in substance: The purported will was brought into his office by Mr. Butler or O. B. Tew, Jr. It was stapled together in the usual manner. The staples were removed when it was taken to the Commercial Printing Company for photographing. When the staples were removed, there were nine staple holes in the blue manuscript cover. On the first sheet there were nine staple holes on the left side, and nine on the right side. There were six holes in the left corner of the second sheet and six in the right corner. In February 1960 he took the instrument to Mr. Hubbard's office, so J. V. Baggett could examine it. Baggett did so, and told Mr. Hubbard and him he wrote the first page, except the 5th paragraph, he did not write the second page.

Caveators offered evidence to this effect: A. T. Sessoms' lockbox in the bank vault was opened in the absence of the clerk of the Superior Court. A. T. Sessoms kept large amounts of cash in his lockbox. When the lockbox was opened after his death, no cash was found in it. When A. T. Sessoms was carried to the hospital, he had a large

amount of cash on his person. Inez Sessoms took possession of this money.

Caveators contend that the testimony of L. A. Bethune and Geraldine Hudson as to the date of the execution of the purported will was vague and contradictory, as in fact it was, and therefore the purported will was not properly witnessed.

When J. V. Baggett was recalled as a witness by propounder, he testified on cross-examination: "Yesterday while on the stand I remembered having written the second page. I remembered that after having told you positively that I did not write it. . . . I know I rewrote it on a longer piece of paper than I used the first time. I unstapled the will one time. I stapled it when I first wrote it; then when I rewrote the second page, I unstapled it and restapled it. It had not been previously unstapled; so when I finished with it, it had two staple holes, the first and second one. That is right as far as I know. I don't think anything will refresh my recollection about that."

Judge Paul's charge to the jury appears on pages 64 to 90, both inclusive, in the record. The learned judge, after reading the issues to the jury, charged them accurately and lucidly in respect to the legal requirements and formalities to execute a valid, attested, written last will and testament, as set forth in G.S. 31-3.3, defined correctly the term the greater weight or preponderance of the evidence, stated the evidence accurately in great detail, and properly placed upon propounder the burden of proof on the first issue, *In re Will of Morrow*, 234 N.C. 365, 67 S.E. 2d 279; *In re Will of Hedgepeth*, 150 N.C. 245, 63 S.E. 1025.

Judge Paul then charged the jury as follows: "And so, Gentlemen, on the first issue, I charge you, that if you find from the evidence in this case and by its preponderance or greater weight, the burden being upon the propounders to so satisfy, that sometime after 1946 and prior to 1955, A. T. Sessoms requested J. V. Baggett to prepare a last will and testament for him, advising Baggett how he, Sessoms, desired his property to be left after his death, and that following such conversation J. V. Baggett typed a two page instrument and gave it to A. T. Sessoms; and that a year or two later Sessoms again talked to Baggett about one O. B. Tew being named in his will as executor, rather than his wife, Mrs. Inez Sessoms; that Baggett then called Tew and Tew consented to act as executor. That Baggett then took the two page instrument he had theretofore prepared for A. T. Sessoms, unstapled it and took out the second page, wrote by typewriter a new second page, bearing date March 4, 1955, and gave it back to Sessoms; that is, gave back to him the two pages, the first page as

he had first typed it, and the newly typed second page; that thereafter, in October or November 1957 or 1958, A. T. Sessoms went to The Scottish Bank in Salemburg and discussed with O. B. Tew a change he wanted made in his will, and at his, Sessoms' request, O. B. Tew had Miss Geraldine Hudson type a new paragraph, numbered five, at the bottom of the first page of the instrument; and that on that occasion A. T. Sessoms had before him the two page typewritten instrument bearing date of March 4, 1955, which has been offered in evidence in this proceeding as Propounders' Exhibit A, the typewritten portion of the two-page instrument then being in words as it now reads; and that at that time A. T. Sessoms, intending to sign the instrument as his will, did so, by signing his name thereto in the presence of Geraldine Hudson and L. A. Bethune, who had been requested by Sessoms or by Tew, at Sessoms' request, and in his presence, witnessed his, Sessoms' will, and that Geraldine Hudson and L. A. Bethune, in the presence of A. T. Sessoms, attested the same by signing their names as witnesses to the instrument; if the propounders in this case have so satisfied you from the evidence in the case and by its preponderance or greater weight, it will be your duty to answer the first issue yes. (If the propounders have failed to so satisfy you from the evidence in the case and by its preponderance or greater weight, it will be your duty to answer the first issue no)." Caveators assign as error the last sentence in parentheses from the quoted part of the charge.

Immediately thereafter Judge Paul charged as follows: "As I have heretofore instructed you, gentlemen, the burden of proof on the first issue is on the propounders. (Now, Gentlemen, if you answer the first issue yes, that is, if you find from the evidence in this case and by its preponderance or greater weight that the paper writing propounded, bearing date of March 4, 1955, was executed by Alfred T. Sessoms according to the formalities of law required to make a valid last will and testament, and if you answer the first issue yes, you will then answer the second issue yes. If you answer the first issue no, that is, if the propounders have not satisfied you from the evidence in the case and by its preponderance or greater weight that the paper writing propounded, bearing date of March 4, 1955, was executed by Alfred T. Sessoms, according to the formalities of law required to make a last will and testament, and if you answer the first issue no, it will then be your duty to answer the second issue no)." This part of the charge in parentheses is assigned as error by caveators.

Caveators' third assignment of error is that Judge Paul did not comply with the provisions of G.S. 1-180, in that in respect to caveators' contentions the judge failed to declare and explain the law

arising on the evidence, and made no application thereof to any of the evidence from which the jury could have found in favor of caveators.

Caveators in their brief state their contentions were: One, the purported will was not properly witnessed. Two, the signature on the instrument offered for probate was not that of A. T. Sessoms. Three, Mrs. Sessoms, the widow, and O. B. Tew, Jr., the executor, conspired to and did offer for probate a forged will, or one in which the first page in which Mrs. Sessoms was named sole beneficiary had been substituted for the original, thereby effecting a forged instrument. And four, the will was written on three different typewriters and was, at best, an altered instrument, if not one forged in part.

It is true as contended by caveators, "there was no direct evidence by either Mr. Bethune or Miss Hudson (Mrs. Naylor), witnesses, or anyone else, as to whether the sheets of paper alleged to comprise the Will were stapled together at the time it was executed." However, O. B. Tew, Jr., testified in respect to the instrument offered for probate, "this is the paper which was signed in my presence, in the presence of Mr. Sessoms, Mr. Bethune and Miss Hudson." J. C. Moore, clerk of the Superior Court of Sampson County, testified the two pages of the purported will were stapled together, when it was delivered to him.

Where a will is written on two separate sheets, G. S. 31-3.3 does not require that they be physically attached, or that the signature of the testator appear on each sheet. The signature of the testator may appear on the second page, and if so, that is sufficient. *In re Will of Roberts,* 251 N.C. 708, 112 S.E. 2d 505; *In re Will of Williams,* 234 N.C. 228, 66 S.E. 2d 902.

In the *Roberts* case this is written: "The general rules have been stated as follows: 'A will need not be written entirely on one sheet of paper, but may be written on several separate sheets, even though there is confusion in the order of their arrangement, provided the sheets are so connected together that they may be identified as parts of the same will. A valid will may be written on several sheets of paper without attaching them where the principle of integration may be applied. While connection by the meaning and coherence of the subject matter is sufficient, as physical connection by mechanical, chemical, or other means is not required, although it is sufficient when made, in the absence of such physical connection, the papers must be identified as one will by their internal sense, by coherence, or adoption of the several parts. Where there is sufficient credible proof of the identity of disconnected sheets propounded as one will, neither the physical nor coherent rule of attachment is applicable.' " It is clear that the

two sheets of the will here are identified as one will by their internal sense, by coherence, or adoption of the several parts, because all of its dispositive provisions and Item 5 appear on the first page, and the second page contains only the appointment of an executor. The failure to charge the above rule of law under the facts here and the charge as given was not prejudicial error.

While the caveators offered evidence tending to show that A. T. Sessoms once said about a year and a half or a year before his death that he was going to see that Wilton Spell and his wife, Beatrice Sessoms Spell, are taken care of, there is no evidence tending to show that A. T. Sessoms ever had a will written to do so. All the evidence tends to show that the only will he had written was one leaving everything he had to his widow. There is no evidence tending to show that any alteration was ever made in the dispositive parts of the instrument offered for probate, but the only change, other than the addition of Item 5, was the appointment of a different executor on page 2. Such being the case the failure of the judge to charge the jury on the principle of law as to alterations was not prejudicial to caveators in the light of the evidence and the charge given.

Judge Paul in charging the jury on the first issue clearly, accurately and in great detail applied the law to the factual situation having support in propounder's evidence, as required by G.S. 1-180. Then immediately thereafter, Judge Paul charged the jury. "If the propounders have failed to so satisfy you from the evidence in the case and by its preponderance or greater weight, it will be your duty to answer the first issue no." Judge Paul had in a previous part of the charge stated caveators' evidence in great detail, and had stated to the jury that caveators contended the jury should answer the first issue No. By this instruction an opportunity was afforded the jury for an alternative finding, or in other words to answer the first issue No, as contended by caveators. No such opportunity for an alternative finding was afforded the jury in *Williamson v. Williamson*, 245 N.C. 228, 95 S.E. 2d 574, which is relied upon by caveators.

Judge Paul's charge on the second issue is correct, for the reason that it necessarily follows that the second issue should be answered Yes by the jury, if they answered the first issue Yes, and should be answered No, if the jury answered the first issue No.

Caveators have not successfully carried the burden (*Johnson v. Heath*, 240 N.C. 255, 81 S.E. 2d 657) of showing that Judge Paul in his charge failed to comply with the provisions of G.S. 1-180. All caveators' assignments of error are overruled. No prejudicial error is shown. In the trial below there is

No error.