**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA, for the
use and benefit of D'Elegance
Management Limited, Incorporated,
Plaintiff-Appellant,

v.

UNIVERSAL SURETY OF AMERICA,

No. 99-2195

Defendant-Appellee,

and

ENVIRONMENTAL CORRECTIONS
CORPORATION, a/k/a Waste Control
Services,
Defendant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, District Judge.
(CA-97-212-7-F)

Argued: May 3, 2000

Decided: August 29, 2000

Before WILKINSON, Chief Judge, and WILKINS and
WILLIAMS, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded for futher proceed-
ings by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stanley Leigh Rodenbough, IV, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, Greensboro, North Carolina, for Appellant. Clyde Hamilton Jarrett, III, ELLZEY & BROOKS, Raleigh, North Carolina, for Appellee. **ON BRIEF:** H. Arthur Bolick, II, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, Greensboro, North Carolina; Charles D. Meier, MARSHALL, WILLIAMS, GORHAM & BRAWLEY, Wilmington, North Carolina, for Appellant. Terry L. Salazar, FORD, WHITE, WIELINSKI & SALAZAR, P.C., Dallas, Texas, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The United States, for the use and benefit of D'Elegance Management Limited (D'Elegance),**1** filed suit in the United States District Court for the Eastern District of North Carolina against Universal Surety of America (Universal) seeking payment from two payment bonds issued by Universal to cover work performed by D'Elegance on behalf of Waste Control Services (Waste Control) in Pender and New Hanover Counties, North Carolina. The district court granted summary judgment to Universal on the grounds that a one-year statute of limitations barred D'Elegance's claims because the payment bonds covered only the work that D'Elegance performed in Pender County and D'Elegance did not file its claims within one year of the last work

_____

**1** D'Elegance originally asserted claims under the Miller Act, 40 U.S.C.A. §§ 270a-270d (West 1986 & Supp. 2000). Persons asserting claims under the Miller Act must bring their claims in the name of the United States "for the use of the person suing." 40 U.S.C.A. § 270b(b) (West Supp. 2000).

2

that it performed in Pender County. The district court also ruled that Waste Control had paid D'Elegance in full for its work in Pender County. We conclude that the district court was correct to use extrinsic evidence to interpret the second of the payment bonds and to grant summary judgment to Universal on the issues of whether the second payment bond covered only the work performed in Pender County and whether Waste Control paid D'Elegance in full for its work in Pender County. We also conclude, however, that because the first of the payment bonds unambiguously covers all work performed pursuant to D'Elegance's agreement with Waste Control, and not just the work performed in Pender County, the district court erred in granting summary judgment to Universal as to that payment bond. We also conclude that the district court erred in failing to grant D'Elegance's motion for partial summary judgment as to the value of the first payment bond. We, therefore, affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

On September 18, 1996, the U.S. Army Corps of Engineers (the Corps) awarded contract number DACW54-96-D-0049 (the Prime Contract) to Waste Control for the removal of debris in eight counties in North Carolina following Hurricane Fran. On September 19, 1996, the Corps issued delivery order 0001, which was the purchase order for Pender County. On September 23, 1996, the Corps issued delivery order 0002, which was the purchase order for New Hanover County.[2]

Paragraph H.7 of the Prime Contract required Waste Control to provide payment bond coverage for the protection of its subcontractors.[3] As a result, on September 18 and 24, 1996, Waste Control executed and delivered two payment bonds to the Corps, with Waste Control

_____

[2] Delivery Order 0002 also covered work in Onslow County, in addition to work in New Hanover County. It does not appear, however, that D'Elegance performed any work in Onslow County.

[3] Paragraph H.7 of the Prime Contract provides, in pertinent part, that "[t]he Contractor must return executed performance and payment bonds (Standard Forms 25 and 1416, Rev. 1-90, respectively) each with good and sufficient surety or sureties acceptable to the Government." (J.A. at 88.)

3

as principal and Universal as surety. Both payment bonds were executed using Standard Form 25-A, although the parties now assert that Form 1416 was actually the form that the parties should have used. Form 1416 contains a one-year statute of limitations for claims brought under the bond, beginning on the last date upon which the claimant performed the last of the work, or on the last date upon which it furnished the last of the materials for which the suit is brought.[4] Form 25-A, which is the form that the parties actually used, does not explicitly contain a limitations period, although it does reference the Miller Act, which has a similar one-year limitations period.[5]

In September 1996, D'Elegance began work as a subcontractor for Waste Control under an oral agreement. On October 7, 1996, D'Elegance entered into a written subcontract with Waste Control, under which D'Elegance agreed to furnish labor and equipment for debris removal in support of Waste Control's obligations under the Prime Contract. The written agreement also required D'Elegance to work at times and locations directed by Waste Control. As a result of this agreement, D'Elegance performed work in both Pender and New Hanover Counties.

D'Elegance invoiced Waste Control for $2,752,684 for work performed under the subcontract in Pender and New Hanover counties. Waste Control did not pay the full amount of D'Elegance's invoice, however, allegedly leaving a balance of at least $369,623.23. D'Elegance last performed work in New Hanover County under the subcontract on December 12, 1996. It last performed work in Pender County on October 28, 1996.

_____

[4] Form 1416 provides that "the claimant . . . may not bring a suit or any action . . . [a]fter the expiration of one (1) year following the date on which claimant did or performed the last of the work or labor, or furnished or supplied the last of the materials for which the suit is brought." (J.A. at 1604.)

[5] Form 25-A provides that "[t]his form, for the protection of persons supplying labor and material, is used when a payment bond is required under the [Miller Act]." (J.A. at 130.) The Miller Act provides that "no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him." 40 U.S.C.A. § 270b(b) (West Supp. 2000). It is undisputed that the Miller Act does not apply to the present case.

4

On December 3, 1997, D'Elegance filed suit against Waste Control and Universal. Before trial, the district court concluded that Universal was bound by an earlier inadvertent admission that the payment bonds covered all work performed under the Prime Contract. Consequently, the case proceeded to trial only on the issue of the amount due under the bonds. D'Elegance argued that Universal owed $462,000, while Universal argued that D'Elegance was entitled to only $369,623.23. During trial, however, the district court heard testimony from Alan Dodd, a D'Elegance witness, which the district court believed was consistent with Universal's argument that the payment bonds covered only the work performed in Pender County.[6] Although the district court allowed the case to go to the jury, it cautioned the parties that Dodd's testimony undermined Universal's admission, and, therefore, that the district court was contemplating a mistrial. On August 17, 1998, the jury entered a verdict of $369,623.23 in favor of D'Elegance.

After the jury's verdict, the district court informed the parties that they would have ten days to agree upon a method by which to conduct a hearing to determine the actual scope of the work covered by the payment bonds, and that if the parties could not agree upon a method, the district court would declare a mistrial. On November 2, 1998, the district court declared a mistrial.[7] The parties conducted further discovery, and D'Elegance and Universal each filed cross-motions for summary judgment. On August 5, 1999, the district court granted Universal's motion for summary judgment and denied

_____

[6] Dodd, a Waste Control project manager, testified that he and Kevin McQuain, a surety agent for Universal, had approached the Corps and requested the Corps's consent to roll-over the initial bond amounts to cover subsequent delivery orders. The district court believed that Dodd's testimony supported Universal's argument that Waste Control and Universal intended that the payment bonds cover only Pender County, and not all work covered under the Prime Contract.

[7] This case had previously been consolidated with a related case at trial. See United States for the Use and Benefit of S&D Land Clearing, Inc. & Mike Mitchell, d/b/a Malaco v. Environmental Corrections Corp., a/k/a Waste Control Serv.; D'Elegance Management Ltd., Inc., and Universal Surety of America, No. 7:97-CV-49-F. After the district court declared a mistrial, however, it deconsolidated these cases.

5

D'Elegance's motion for partial summary judgment. The district court concluded that the payment bonds were ambiguous, and, after considering extrinsic evidence, held that the payment bonds covered only the work performed in Pender County. The district court then reasoned that, under either Form 25-A or Form 1416, D'Elegance had to file its claim within one year of the date that D'Elegance performed its last work in Pender County.**8** The district court concluded that because D'Elegance filed its claim more than a year after its last work in Pender County -- even though it performed work in New Hanover County within a year of filing its claim -- the statute of limitations barred D'Elegance's claim. The district court also held that Universal had paid D'Elegance in full for all of its work in Pender County. On August 27, 1999, D'Elegance timely filed its notice of appeal.

## II.

On appeal, D'Elegance raises several issues. It argues that the payment bonds are unambiguous, and, therefore, the district court on summary judgment should not have considered extrinsic evidence in determining the scope of the bonds. D'Elegance also asserts that even if the district court properly considered extrinsic evidence in determining the scope of the payment bonds, it erred in concluding that there is no genuine issue of material fact as to the scope of the bonds. D'Elegance also argues that even if the payment bonds covered only work performed in Pender County, the district court erred in determining that there is no triable issue of fact as to whether Waste Control paid D'Elegance in full for its work in Pender County and that the district court also erred in concluding that a one-year statute of limitations barred D'Elegance's claim. Finally, D'Elegance argues that the district court erred in failing to grant D'Elegance's motion for partial summary judgment on the basis that Universal has not disputed, and, indeed, had conceded during the initial trial, that it owed D'Elegance at least $369,623.23 if it was deemed liable under the payment bonds.

_____

**8** The district court recognized that if the payment bonds also covered the work performed in New Hanover County, then the one-year statute of limitations would not be relevant because D'Elegance filed its claim within one year of its last work in New Hanover County.

6

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). If the moving party has supported its motion with depositions or affidavits, then the non-moving party cannot rely upon mere allegations in its response, and it instead must provide specific facts demonstrating that there is a genuine issue for trial. See id. at 250. The non-moving party cannot manufacture a genuine issue of material fact through mere speculation, or by simply building one inference upon another. See Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). We review the district court's grant of summary judgment de novo, viewing the facts and inferences in the light most favorable to the nonmoving party. See Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, 202 F.3d 223, 227 (4th Cir. 2000).

## III.

D'Elegance first argues that the district court erred in granting Universal's motion for summary judgment based upon its finding that the payment bonds are ambiguous, thus requiring consideration of extrinsic evidence in determining the scope of the payment bonds. D'Elegance argues that, on their faces, the payment bonds clearly cover all work performed under the Prime Contract and there is no indication that the bonds are limited in scope. Universal responds that although the payment bonds list the same contract number as the Prime Contract, the two bonds have different contract dates, including one that has a date that corresponds to the date of the award for the Prime Contract (the first payment bond)[9]  and another that has a date

_____

[9] The first payment bond, which was executed on September 18, 1996, lists the contract date as "9/18/96," which is the date of the Prime Contract, (J.A. at 129, 1546), and it also lists the contract number as "DACW54-96-D-0049," which is the contract number of the Prime Contract. (J.A. at 257-59, 1546.) The first payment bond has a value of $250,000.

7

that corresponds to the date of delivery order 0001 (the second payment bond), which covered the work performed in Pender County.[10] Universal argues that no contract date corresponds with delivery order 0002, which encompassed D'Elegance's work in New Hanover County.

We conclude that the first payment bond is unambiguous. The first payment bond refers to the contract number of the Prime Contract and it also lists the contract date as September 18, 1996, which is the date of award of the Prime Contract. There are no limitations on the face of the first payment bond as to the scope of its coverage. The first payment bond, therefore, unambiguously covers the Prime Contract as a whole, and not just work performed in Pender County. Accordingly, we reverse the district court's grant of summary judgment with respect to Universal's obligations under the first payment bond.

We agree with the district court, however, that the second payment bond is ambiguous. Although the second payment bond lists the contract number of the Prime Contract, the second payment bond specifically refers to the contract date as September 19, 1996 -- the date of delivery order 0001, which corresponds to the work performed in Pender County. Because the second payment bond is ambiguous, the district court did not err in considering extrinsic evidence as to that bond. See New Hanover Rent-A-Car, Inc. v. Martinez, 525 S.E.2d 487, 490 (N.C. Ct. App. 2000) (stating that extrinsic evidence is admissible to explain an ambiguous contract).

IV.

D'Elegance next argues that the district court erred in concluding that there is no triable issue of fact as to the scope of the second payment bond. The district court, after considering extrinsic evidence,

_____

[10] The second payment bond, which was executed on September 24, 1996, lists the contract number as "DACW54-96-D-0049," which is the contract number of the Prime Contract, (J.A. at 264, 1546), and it lists the contract date as "9/19/96," which is the date of delivery order 0001. (J.A. at 264, 1607.) Delivery order 0001 covers"[t]he work areas [of] all of Pender County." (J.A. at 1607.) The second payment bond has a value of $800,000.

8

concluded that the scope of the second payment bond covers only work performed in Pender County. Viewing the facts and the inferences in the light most favorable to D'Elegance, we agree with the district court that D'Elegance has failed to raise a triable issue of fact concerning whether the second payment bond covers work performed in New Hanover County.

D'Elegance's most direct evidence in favor of its position is the testimony of Shirley Lambert, a contracting officer, who, according to D'Elegance, "testified at her deposition that the Payment Bonds issued by Universal covered all work to be performed under the contract, and was not limited to one delivery order." (Appellant's Br. at 21.) It is true that Lambert, after being shown "Exhibit Numbers 2 and 3," (J.A. at 163), testified that she understood those exhibits to reference the Prime Contract as a whole, and that they would cover work issued under the contract "whether one was issued or ten or whatever number." (J.A. at 163-64.) Our review of the record, however, reveals that Exhibits 2 and 3, upon which Lambert based her testimony, refer only to the first payment bond, and not the second payment bond. Thus, although Lambert's testimony is consistent with our conclusion above that the first payment bond covers all work performed under the Prime Contract, see supra Part III, it does not address the scope of the second payment bond.

By contrast, Shelly Bolender, who worked on Universal's behalf in issuing the bonds, testified that she understood the scope of the bonds to cover only Pender County. Likewise, Alan Dodd, who testified on behalf of D'Elegance, stated that he and Kevin McQuain, a surety agent for Universal, approached the Corps

> with the idea of rolling over the bond that we had in place originally to cover some of the other contract amounts, on the basis that at any given time, any given day, any given week, we would not have more tha[n] two million dollars of performance work going on at any one time.

(J.A. at 2084.) The district court relied upon this testimony to conclude that Waste Control and Universal understood that the bonds covered only Pender County, and that it was necessary to roll over the bond for Pender County to cover the other delivery orders. We have

9

no difficulty agreeing with the district court that, based upon the extrinsic evidence in the record, D'Elegance has failed to raise a triable issue of fact as to the scope of the second payment bond.**11**

V.

D'Elegance next argues that the district court erred in concluding that there is no triable issue of fact as to whether Waste Control paid D'Elegance in full for its work in Pender County. We disagree.

In support of its motion for summary judgment, Universal offered evidence that D'Elegance regularly submitted invoices to Waste Control and that Waste Control regularly paid those invoices, although Waste Control apparently did not specify in each case whether its payments were for work performed in Pender County or work performed in New Hanover County. Universal offered evidence that between October 7, 1996 and October 28, 1996, the time period in which D'Elegance was performing work in Pender County, D'Elegance's total invoices equaled $1,685,057 and D'Elegance's total invoices for the work it performed in Pender County totaled only $356,092. Universal paid a total of $2,359,317.60 out of D'Elegance's total invoices of $2,752,684 for the work that D'Elegance performed in Pender and New Hanover Counties. Universal argues that under the "first in/first out" (FIFO) method of accounting, under which the first items withdrawn from an inventory are the oldest and under which we would assume that D'Elegance credited Waste Control's payments in the order that the work was performed, it is clear that Waste Control paid D'Elegance in full for its work in Pender County because "[w]hen th[e amount of total payment] is applied to the work in the order in which it was performed, all work performed on or before December 5, 1996 has been paid for. D'Elegance finished work in Pender County on October 28, 1996."

_____

**11** Notably, the Reinsurance Agreement, which was issued to cover the excess above Universal's Treasury Limit, refers to the second payment bond and it specifically describes the scope of coverage as Pender County. The reinsurance agreement lists the bond number as TX 091-6475, which is the bond number of the second payment bond. It also lists the bond issuance date as September 24, 1996, which is the execution date of the second payment bond.

10

(J.A. at 478 (Universal's memorandum in support of summary judgment, at 29).) D'Elegance responds that there is no evidence that it used the FIFO method of accounting and that it is impossible to determine whether the payments were for Pender County or New Hanover County because the payments were received from Waste Control without regard to whether the payments were for work performed in Pender County or New Hanover County.

In attempting to raise a triable issue of fact as to this issue, D'Elegance faced an easy task; it simply had to produce an affidavit or testimony stating that D'Elegance, in fact, does not use the FIFO method of accounting. D'Elegance also could have produced bills or statements or some other evidence showing that Waste Control paid some of its New Hanover County bills before it paid all of its Pender County bills. But D'Elegance has failed to produce this evidence. Instead, D'Elegance has responded with arguments suggesting that it may or may not have been paid in full for its work in Pender County, and that it may or may not use the FIFO accounting system. This speculation is not enough to defeat summary judgment. See Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (stating that the non-moving party cannot manufacture a genuine issue of material fact through mere speculation). Although Metra Hughes, D'Elegance's president, stated in an affidavit that Waste Control told her that it would make only estimated payments for D'Elegance's Pender County work until all of the records for that work could be reconciled, Hughes's affidavit fails to articulate how much was held back or how much Waste Control still owes, or, for that matter, whether Waste Control subsequently reconciled the records and fully paid the Pender County bills.[12] Viewing the facts and inferences in the light most favorable to D'Elegance, it has shown, at most, that D'Elegance is uncertain whether Waste Control paid for all of its work in Pender County.[13] For that reason, we agree with the district court that D'Elegance

_____

[12] Hughes also agreed at deposition that "D'Elegance would submit a billing statement . . . [s]ometime thereafter it would receive a check, but in many or all cases the check they received did not reflect all of the tickets that had been billed." (J.A. at 1651.) Hughes does not, however, indicate whether the unpaid tickets were from Pender County or New Hanover County.

[13] As D'Elegance correctly notes,"[t]o force a particular accounting practice upon D'Elegance, after the fact and without either statutory or

11

has failed to raise a triable issue of fact to defeat summary judgment on this issue.**14**

## VI.

Finally, D'Elegance argues that the district court erred in failing to grant partial summary judgment in D'Elegance's favor. We agree that the district court erred in failing to grant D'Elegance's motion for partial summary judgment as to the $250,000 value of the first payment bond.

D'Elegance argued in its motion for partial summary judgment that Universal owes at least $369,623.23 under the payment bonds. In response to D'Elegance's motion for partial summary judgment, Universal made three arguments: (1) that there was a genuine issue of material fact as to whether D'Elegance owed $108,000 to Universal for various offsets related to costs, expenses, and damages caused by D'Elegance; (2) that both payment bonds covered only work performed in Pender County; and (3) that D'Elegance could not recover

_____

contractual support, would be wholly inappropriate." (Appellant's Reply Br. at 22.) To defeat summary judgment, however, D'Elegance only had to produce some evidence that it did not use the FIFO accounting system, or produce some evidence, beyond mere speculation or argument, that Waste Control's unpaid bills related to Pender County rather than New Hanover County. It failed to do so. Notably, D'Elegance does not argue that it does not actually use the FIFO accounting system. It simply argues that we cannot assume that D'Elegance uses the FIFO accounting system. That assertion is not enough to raise a triable issue of fact.

**14** D'Elegance also argues that the district court erred in concluding that a one-year statute of limitations applies to the payment bonds because the Miller Act applies only to construction contracts and Form 25-A does not contain a one-year statute of limitations. In light of our agreement with the district court that D'Elegance has failed to raise a triable issue of fact as to whether Waste Control paid D'Elegance in full for its work in Pender County, as well as our conclusion above that the first payment bond covers work performed in both New Hanover County and Pender County, see supra Part III, we need not address this argument. It is undisputed that D'Elegance filed its claim within a year of its last work in New Hanover County.

12

under the payment bonds because Waste Control paid D'Elegance in full for its work in Pender County and the statute of limitations barred D'Elegance's claim as it related to Pender County. Notably, Universal did not assert that it paid D'Elegance in full for its work in New Hanover County or that D'Elegance was not entitled to compensation for its work in New Hanover County. Indeed, except for the alleged $108,000 offset, Universal has not contested D'Elegance's entitlement to at least $369,623.23 for its unpaid work in New Hanover County, at least to the extent that the payment bonds cover that work. As noted above, we have concluded that the first payment bond covers D'Elegance's work in New Hanover County. See supra Part III. Consequently, even if we assume that D'Elegance owes $108,000 to Universal in offsets, it is still undisputed that Universal owes D'Elegance the difference between the $108,000 offset and the $369,623.23 that is otherwise not in dispute. Consequently, even if Universal is entitled to a $108,000 offset, D'Elegance is still entitled to at least $261,623.23 under the payment bonds. Because this amount is more than the $250,000 value of the first payment bond, we conclude that D'Elegance is entitled to partial summary judgment as to the $250,000 value of the first payment bond. [15]

VII.

In conclusion, the first payment bond unambiguously covers the work performed under the Prime Contract, including the work performed in New Hanover County. Thus, the district court erred in considering extrinsic evidence with respect to the first payment bond and

_____

[15] D'Elegance maintains that Universal is bound by its concession at the initial trial that it owed D'Elegance at least $369,623.23 in the event that Universal was found liable under the payment bonds. At trial, Universal argued that D'Elegance was entitled to $369,623.23 rather than the $462,000 that Universal sought. Although the district court granted a mistrial after the jury's verdict, D'Elegance maintains that Universal is bound by its concession, and, therefore, that the district court should have granted partial summary judgment in D'Elegance's favor. Universal responds that because the district court declared a mistrial, Universal's prior position at trial is no longer in the record. In light of our disposition above, we need not address whether Universal's prior position is binding as a judicial admission.

13

in granting Universal's motion for summary judgment with respect to the first payment bond. We agree with the district court, however, that the second payment bond is ambiguous and that it was appropriate for the district court to consider extrinsic evidence as to the scope of the second payment bond. We also agree that the district court did not err in granting Universal's motion for summary judgment as to the second payment bond because the second payment bond covers only the work performed in Pender County and because D'Elegance has failed to raise a triable issue of fact to dispute Universal's contention that it paid D'Elegance in full for the work in Pender County. Finally, we conclude that D'Elegance is entitled to partial summary judgment as to the $250,000 value of the first payment bond. We, therefore, affirm in part and reverse in part the district court's judgment below, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED FOR FURTHER PROCEEDINGS

14